William ANDERSEN, Robert Chriske, Marlyn Hestetune, et al., for themselves and on behalf of all Participants and Beneficiaries of the Chrysler/AMC Salaried Employee Pension Plan, who have completed 30 or more years of service and had not yet attained age 55 at the time of termination, Plaintiffs–Appellants,

v.

CHRYSLER CORPORATION, a Delaware corporation, A.P. St. John and W.B. Maher, individually, as fiduciaries under the Chrysler/AMC Salaried Employees Pension Plan, Defendants–Appellees.

No. 95–3335.

United States Court of Appeals, Seventh Circuit.

Argued March 25, 1996.

Decided Nov. 1, 1996.

Francis R. Croak, Mark C. Veldey, David J. Hase, Brian R. Wanasek (argued), Cook & Franke, Milwaukee, WI, for Plaintiffs–Appellants.

Ely A. Leichting, Daniel E. Conley (argued), Heidi Retzlaff, Quarles & Brady, Milwaukee, WI, for Defendants–Appellees.

Before BAUER, RIPPLE and EVANS, Circuit Judges.

RIPPLE, Circuit Judge.

This putative class action is the third in a series of three lawsuits brought by six named plaintiffs against Chrysler Corporation ("Chrysler"). They challenge various benefits they received following the closing of the plants in which they worked. The district court believed this lawsuit was foreclosed on the ground of res judicata because of the previous two suits. It therefore granted summary judgment for the defendants. Although we cannot accept the district court's holding that the plaintiffs' prosecution of the previous two suits bars this action as res judicata, we agree with the alternate grounds that the defendants offer for affirming the judgment.

## I

## BACKGROUND

### A. *Facts*

The six named plaintiffs in this suit are former American Motors Corporation ("AMC") employees who worked at plants in Kenosha and Milwaukee, Wisconsin. AMC merged with Chrysler in 1987. Prior to the merger, AMC anticipated that Chrysler would close the Kenosha and Milwaukee plants after the merger. To encourage employees at those plants to continue their employment until the actual closings, AMC implemented the Salaried Employees Retention Program ("SERP"). The SERP did not directly pay any benefits; rather, it modified AMC's existing benefit plans, including AMC's Salaried Employees Pension Plan ("pension plan") and Separation Pay Plan ("severance plan"). Among other modifications, the SERP enhanced the severance pay of those employees who remained through

the plant closings. Following the merger of AMC into Chrysler, the latter became the administrator for all AMC benefit plans.

In 1989, the six plaintiffs in this case filed the first of their suits—*Hestetune v. Chrysler Corporation/AMC*, No. 89 C 1211, 1992 WL 430673 (E.D.Wis. September 8, 1992)— against Chrysler in its capacity as the AMC severance plan administrator. Although *Hestetune* was purportedly brought as a class action, it appears that the plaintiffs never moved for class certification. *Hestetune* challenged certain SERP modifications to AMC's severance plan. In particular, although the SERP increased the severance pay for those employees who remained through the plant closings, it reduced those benefits by the amount of the pension benefits received by those employees who retired following the plant closings. Because this reduction in SERP benefits applied only to retirement-aged employees, the plaintiffs in *Hestetune* alleged that the SERP violated the Age Discrimination in Employment Act, 29 U.S.C. §§ 621–34 ("ADEA"). On September 8, 1992, the district court dismissed *Hestetune* because it was filed outside the applicable statute of limitations, and because the severance plan, as a bona fide employee benefit plan, was therefore exempt from the ADEA. The plaintiffs did not appeal that dismissal.

In 1991, the six plaintiffs in this suit filed the second of their lawsuits—*Chriske v. Chrysler Corporation*, No. 91 C 1063 (E.D.Wis. March 26, 1993).[1] As in *Hestetune*, *Chriske* was brought as a class action, though it is unclear from the record whether the plaintiffs ever moved for class certification.[2] In *Chriske*, the plaintiffs again challenged various provisions of the SERP, this time alleging that the reduction of their SERP enhanced severance pay by their monthly pension benefits violated the Employee Retirement Income Security Act, 29 U.S.C. § 1001 et seq. ("ERISA"). Specifically, the plaintiffs alleged that: (1) the SERP modified the severance plan even though that plan contained no procedures for incorporating such a modification, in violation of ERISA § 402(b)(3), 29 U.S.C. § 1102(b)(3); (2) the summary of the severance plan Chrysler published—the "White Book"—did not contain an accurate summary of the SERP modifications, nor did the defendants file a copy of the SERP-modified severance plan with the Department of Labor, both in violation of ERISA § 102, 29 U.S.C. § 1022; and (3) the defendants violated various fiduciary duties under ERISA § 404, 29 U.S.C. § 1104. On March 26, 1993, the district court, on its own motion, dismissed *Chriske*, ruling that the final judgment in *Hestetune* barred the action as res judicata. Again, the plaintiffs did not appeal.

**B. *The Present Suit***

The plaintiffs filed the present suit on December 11, 1990. This suit, although raising ERISA challenges similar to those raised in *Chriske*, pertains not to AMC's severance plan but to its pension plan. The plaintiffs filed the present suit against Chrysler and two Chrysler officers who are fiduciaries of the pension plan (collectively, "Chrysler"). Although this case was brought purportedly as a class action, the six named plaintiffs have never moved for class certification.

The grievance of the plaintiffs' complaint is that the defendants wrongfully reduced pension benefits for early retirees. AMC's pension plan grants "Regular Early Retirement Benefits" to employees who retire before the age of 55 after completing 30 years of employment. (Other classes of employees are also eligible for Regular Early Retirement

---

**1.** *Chriske* was actually the third lawsuit to be filed; the present suit was filed after *Hestetune* but before *Chriske*. The district court decided *Chriske* before this suit, however. Because it is the order in which these three cases were decided by the district court that is relevant for this appeal, and not the order in which they were filed, for simplicity' sake we shall treat *Chriske* as the plaintiffs' "second" suit.

**2.** At oral argument before this court in the present case, counsel for the appellants stated, "In none of these three cases [*Hestetune*, *Chriske* or the present case] have classes been certified." On the other hand, the order of the district court in *Chriske* begins by stating, "On October 1, 1991, Robert Chriske, Ed Johnson and 119 additional Plaintiffs commenced this case against Chrysler Corporation...." Similarly, the district court's judgment in *Chriske* names 121 plaintiffs.

Benefits, but those situations are not relevant to this case.) The pension plan provides an "Early Retirement Supplement" for all employees who retire prior to the age of 65 with 30 or more years of service; early retirees receive the Early Retirement Supplement until they reach age 62.[3]

However, the pension plan places an upper limit or "cap" on the additional income a retiree may earn while receiving a "temporary Supplement." The plan establishes income caps for each year (for example, $10,-000 in 1990) and, if a retiree's additional income exceeds the cap in a given year, the plan provides that:

a penalty equal to the amount by which such earnings exceeds [sic] the amount permitted, but not to exceed the amount of the temporary Supplement otherwise payable in the calendar year in which he has such excess earnings, shall be charged against each succeeding monthly temporary Supplement which the [retiree] would otherwise be entitled to receive until the full amount of such penalty is satisfied.

The plan thus imposes a penalty of $1—up to a maximum equal to the amount of the employee's "temporary Supplement"—for each $1 of additional income above the cap that an early retiree earns in a given calendar year (which we will refer to as "excess additional income").

It appears from the record that, while AMC administered the pension plan, it never enforced this cap on additional earnings. When Chrysler took over the administration of AMC's pension plan, however, it indicated that it would enforce the cap. Moreover, in January 1988, Chrysler published the "White Book"—a summary of the benefits employees were to receive—in which Chrysler stated that it would impose a penalty of $2 for each $1 of excess additional income early retirees earned. Chrysler also stated that, if it could not recoup the entire amount of the penalty within a single calendar year, it would carry the balance of the penalty over into ensuing years until it had recovered the full penalty.

The plaintiffs take three exceptions to Chrysler's stated plans. First, they argue that their Early Retirement Supplements are not "temporary Supplements," and that the pension plan authorizes Chrysler to reduce only "temporary Supplements" for excess additional income. Second, they maintain that the pension plan provides no authority for Chrysler to offset any supplement by $2 for each $1 of excess additional income. Third, they contend that the pension plan permits Chrysler to reduce "temporary Supplements" only within the calendar year in which a recipient exceeds the additional income cap, and that Chrysler therefore has no authority under the pension plan to carry the balance of the penalty over into ensuing years. Thus, the plaintiffs submit that Chrysler exceeded the authority it possessed under the pension plan and, in so doing, violated its fiduciary duty under ERISA.

The plaintiffs therefore brought this suit pursuant to ERISA's civil enforcement provision, ERISA § 502, 29 U.S.C. § 1132, asserting five ERISA violations. The first count of their complaint alleges that Chrysler failed to administer the pension plan according to the documents and instruments governing the plan, thereby violating ERISA § 404, 29 U.S.C. § 1104. Their second count accuses Chrysler of publishing a false and misleading summary of the pension plan—the White Book—in violation of ERISA § 102, 29 U.S.C. § 1022. Their third count claims that Chrysler engaged in "prohibited transactions," in violation of ERISA § 406, 29 U.S.C. § 1106, by denying benefits to plan participants, thereby decreasing the amount of money Chrysler was required to pay under the plan. In their fourth count, the plaintiffs assert that the defendants interfered with rights protected under ERISA, in violation of ERISA § 510, 29 U.S.C. § 1140. Finally, the plaintiffs bring a claim for "de-

---

3. It appears from the pension plan itself that early retirees receive the Early Retirement Supplement until they reach age 65, although they receive a lower amount between the ages of 62 and 65. The White Book, however, indicates that retirees are eligible for the Early Retirement Supplement only until they are 62 years old, and the parties indicate that the Early Retirement Supplement lasts only until age 62. This discrepancy is not relevant to the resolution of this case; either way, the Early Retirement Supplement lasts only from the time an employee takes early retirement until he or she reaches a fixed age.

ceit and misrepresentation," based upon the allegedly erroneous statements in the White Book.

### C. Proceedings in the District Court

As noted previously, see supra, at note 1, this case was filed after *Hestetune* but before *Chriske*. None of the parties moved to consolidate this case with *Hestetune* or *Chriske*, which were simultaneously pending before different judges in the same court.

In its answer to the plaintiffs' complaint, Chrysler initially admitted that it had erroneously penalized a "limited" number of early retirees on a $2-for-$1 basis for excess additional income, but claimed that it had reimbursed those retirees for the over-penalty, and that it would not enforce the $2-for-$1 penalty in the future. Upon further investigation, however, Chrysler determined that it had never actually enforced the $2-for-$1 penalty against any retiree, and that it had applied the $1-for-$1 penalty to only six retirees. (The record does not indicate whether any of the named plaintiffs were among these six.) Chrysler submitted an affidavit to this effect, and the parties stipulated to a corresponding amendment to Chrysler's answer. Moreover, in May 1991, Chrysler sent a letter to AMC retirees correctly informing them that the penalty for excess additional income was only $1-for-$1.

After discovery, the plaintiffs moved for partial summary judgment on the issue of liability, although, as we noted above, they had not yet moved to certify a class. Broadly stated, the plaintiffs asserted two grounds entitling them to summary judgment. First, they urged that Chrysler's admission that the $2-for-$1 penalty description in the White Book was erroneous was proof of a per se violation of ERISA § 102, 29 U.S.C. § 1022, which requires that a summary plan description be "accurate and comprehensive." Second, the plaintiffs submitted that the pension plan itself did not provide Chrysler with the authority to reduce Early Retirement

Supplements at all for excess additional income, to offset any supplement on a $2-for-$1 basis for excess additional income, or to carry the balance of a penalty from one year to the next.[4]

Chrysler, in turn, filed its own motion for summary judgment. The company maintained that, to the extent that no retiree had been subjected to the $2-for-$1 penalty, none of the plaintiffs had been deprived of any benefits to which he or she was entitled under the pension plan, and that ERISA did not entitle them to any extra-contractual damages. Second, Chrysler asserted that the technical ERISA violations it had committed did not state a cause of action under ERISA. Finally, Chrysler contended that the plaintiffs' counts relating to "Prohibited Transactions" and "Interference with Protected Rights" lacked any factual basis, and that the plaintiffs' claims for "Deceit and Misrepresentation" were preempted by ERISA.

After the parties had filed their cross-motions for summary judgment, the district court decided *Chriske*. The defendants then amended their answer in this case to raise the affirmative defense of res judicata and moved for summary judgment on that ground. The district court granted summary judgment in favor of the defendants, holding that the present suit was barred by the plaintiffs' previous suits in *Hestetune* and *Chriske*. According to the district court, *Hestetune, Chriske* and the present suit:

> each ... centered around how much money [the] plaintiffs are to receive from Chrysler/AMC benefit plans following their discharge from Chrysler. In *Chriske* and *Hestetune*, [the] plaintiffs claimed that their severance pay had been improperly decreased and offset by payments they were getting under the same Pension Plan whose provisions they are contesting here. As well, both the Pension Plan and the Severance Pay Plan were modified by the

4. The plaintiffs also claimed that Chrysler's admissions that it had not filed various documents with the Secretary of Labor—as required by ERISA §§ 101–04, 29 U.S.C. §§ 1021–24—amounted to per se violations of ERISA warranting summary judgment in their favor. As the plaintiffs made no claims or allegations in their complaint regarding Chrysler's failure to file documents with the Secretary of Labor, these "admissions" by Chrysler do not warrant a grant of summary judgment on any of the claims the plaintiffs did raise.

[SERP]. . . . Lastly, a core claim in all three cases is that the White Book the defendants distributed . . . was misleading and/or inaccurate.

Thus, the district court concluded that "the same general core or nucleus of operative facts has given rise to all three suits," and that dismissal of the present suit based upon res judicata was therefore warranted. This appeal followed.

## II

## DISCUSSION

### A. Res Judicata

■ We review de novo the district court's dismissal of a suit on res judicata grounds. *Kratville v. Runyon*, 90 F.3d 195, 198 (7th Cir.1996). To warrant dismissal of a suit for res judicata, a defendant must prove three elements: (1) an identity of the parties or their privies; (2) an identity of the causes of action; and (3) a final judgment on the merits. *Id.* at 197. The parties here agree that both *Chriske* and *Hestetune* have been finally resolved on their merits; they disagree, however, as to the other two elements.

Initially, the plaintiffs contend that there is no identity of the parties between this case and *Hestetune* and *Chriske*. The plaintiffs submit that the potential class of plaintiffs in this case-Chrysler/AMC employees entitled to Regular Early Retirement Benefits—differs materially from the potential class of plaintiffs in *Hestetune* and *Chriske*—Chrysler/AMC employees over the age of 40 eligible for SERP-enhanced benefits. Chrysler responds the plaintiffs never moved to certify a class in this case, and that, in the absence of any class certification, the only parties relevant for res judicata purposes are the six named plaintiffs, all of whom were parties to the two prior suits. The plaintiffs reply that they may properly await resolution of the issue of liability before moving for class certification, and that we should determine identity of the parties based upon their representation of who the class members would have been had a class been certified. However, we need not determine whether there is an identity of parties among these three cases because res judicata is inapplicable for another reason: lack of identity of causes of action between this case and *Hestetune* or *Chriske*.

■ We have previously observed the difficulty of articulating an "operational legal standard" for identifying situations in which two causes of action are so closely related that they must be brought together, lest the first suit bar the second as res judicata. *See Herrmann v. Cencom Cable Assocs.*, 999 F.2d 223, 226 (7th Cir.1993). Traditionally, we have employed the "same transaction" test to determine whether res judicata applies. Under this "same transaction" test, once "a transaction has caused injury, all claims arising from that transaction must be brought in one suit or be lost." *Car Carriers, Inc. v. Ford Motor Co.*, 789 F.2d 589, 593 (7th Cir.1986) (citation omitted). We define a "transaction," in turn, as "a single core of operative facts which give rise to a remedy." *Id.* (citations and internal quotations omitted).

■ Even this definition of a "transaction" leaves some ambiguity as to what constitutes a "single core of operative facts." Res judicata was not meant to be a trap for the unwary and members of the bar ought to be able to advise their clients as to its applicability. Recognizing the importance of providing adequate notice to litigants as to which claims they need to bring in a single suit, we therefore recently refined the "same transaction" test by focusing on whether the multiple claims turned on the "same facts." *Herrmann*, 999 F.2d at 226. Under this approach, "two claims are one for purposes of res judicata if they are based on the same, or nearly the same, factual allegations." *Id.* (citations omitted). By looking to whether the facts the plaintiff must prove in two claims are substantially similar, this test offers litigants a more definite touchstone for determining with certainty whether claims may be split or must be brought in a single suit.

Nonetheless, even the "facts" of a case may be described either broadly or narrowly. Therefore, our cases have emphasized that, to ensure fair notice to litigants and to yield predictable results, courts should examine the "facts" of a case at a sufficient level of

specificity. *Colonial Penn Life Ins. Co. v. Hallmark Ins. Adm'rs,* 31 F.3d 445 (7th Cir. 1994), and *In re Stoecker,* 5 F.3d 1022 (7th Cir.1993), provide examples of the importance of describing the facts of a case at the proper level of specificity.

In *Colonial Life,* Colonial contracted to issue and underwrite an insurance policy that Hallmark would service. Based on this contract, Hallmark took out a $1.5 million loan from Harris Hinsdale Bank—a loan which Colonial guaranteed. Colonial then breached its contract with Hallmark; Hallmark sued Colonial and was awarded $2.5 million. In the meantime, Hallmark defaulted on its loan from Harris Hinsdale. Colonial, as the guarantor of the loan, paid the bank and was subrogated to the bank's right to sue Hallmark on the underlying loan. Colonial brought suit against Hallmark, and Hallmark defended on the ground of res judicata, claiming that this second suit arose out of the "same transaction" as its previous suit against Colonial.

On a very general level, one could say that Colonial's suit against Hallmark did arise out of the same transaction as did Hallmark's suit against Colonial: The contract between Colonial and Hallmark, Hallmark's loan from Harris Hinsdale, and Colonial's guarantee of Hallmark's loan were all part of the same business deal between Hallmark and Colonial. Nonetheless, we rejected Hallmark's assertion of res judicata, holding that the two claims did not arise out of the same factual allegations. *Colonial,* 31 F.3d at 447. The court found the facts supporting Hallmark's breach of contract claim against Colonial to be completely different from the facts supporting Colonial's claim, as Harris Hinsdale's subrogee, of default on the loan. *Id.* at 447–48. Because each of the claims in the two suits involved different acts between different parties at different times, res judicata did not bar Colonial's claim against Hallmark.

*Stoecker* is similar analytically to *Colonial Life.* In *Stoecker,* the Bank of Bellwood loaned $750,000 to Stoecker on his unsecured promissory note. Stoecker paid $16,000 in interest in December 1988 and January 1989, but failed to pay the note when it came due on February 1, 1989. The bank then obtained a judgment against Stoecker on February 6 for the amount of the note. On February 21, Stoecker was petitioned into bankruptcy, and the bank later filed with the bankruptcy court proof of secured claims for various judgment liens it had obtained.

The bankruptcy trustee then sought to recover as preferential transfers the $16,000 in interest Stoecker had paid to the bank in December 1988 and January 1989. The bank and the trustee ultimately settled this claim; the bank returned to the estate $11,000 and released the estate from all "claims, demands or causes of action" it might have against the bankruptcy estate, except for its proof of secured claims, and the trustee agreed to release all "claims, demands or causes of action" it might have against the bank.

Later, the trustee objected to the bank's proof of secured claims, arguing that the judgment liens the bank had obtained in February 1989 were also preferential transfers. The bankruptcy court found for the trustee, but the district court reversed and ruled in favor of the bank. On appeal, we addressed the bank's argument that res judicata barred the trustee's objection to the secured claims because that objection arose from the "same transaction" as the trustee's earlier adversary complaint to recover the interest payments to the bank.

Once again, at a high level of generality, the two claims could be said to arise out of the "same transaction": Stoecker's loan from the Bank of Bellwood. At an appropriate level of specificity, however, it became clear that the two claims arose from completely separate facts: The trustee's claim regarding the interest payments related to Stoecker's conduct in December 1988 and January 1989 in making interest payments to the bank. *Stoecker,* 5 F.3d at 1030. In contrast, the trustee's objection to the secured claims was based upon the bank's conduct from February 6–21 in obtaining a judgment against Stoecker and obtaining judgment liens against Stoecker's assets. *Id.* at 1030–31. We held that, although "both claims ... by the trustee arise ultimately out of the bank's loan and Stoecker's bankruptcy[,] ... the conduct giving rise to the two claims occurred at different times and involved differ-

ent acts by different parties: the preferential interest payments were made by Stoecker, the preferential lien [was] filed by the bank." *Id.* at 1031. Thus, we held that the factual overlap between the two claims was too small to bar the trustee's claim challenging the liens as res judicata. *Id.*

■ Turning to the case before us, Chrysler maintains on appeal that all three cases "[are] about how much money [the] plaintiffs are to receive from Chrysler/AMC benefit plans following their termination." Appellees' Br. at 12. Moreover, Chrysler submits, both *Chriske* and the present case allege similar ERISA violations. *Id.* at 13. These contentions, however, illustrate the danger of describing the "facts" of a case at too great a level of generality. Following *Colonial Life* and *Stoecker*, we believe that, when examined at an appropriate level of specificity, the facts giving rise to the claims in *Hestetune* and *Chriske*, on the one hand, and this case, on the other, are sufficiently different to preclude a finding of res judicata. Although all three cases the plaintiffs have filed against Chrysler challenge some aspect of their employee benefits, the claims in *Hestetune* and *Chriske* involved a different benefit plan and alleged different wrongful acts by different parties.

First, the present case involves a different benefit plan from that challenged in the prior two cases. *Hestetune* and *Chriske* raised allegations pertaining to the SERP and the severance plan. The SERP modified the severance benefits of AMC employees who remained with AMC through the closure of AMC's plants. In contrast, this case relates only to the pension plan; the SERP and severance plan are completely irrelevant to this case. The pension plan provided benefits for employees who retired after working for AMC for a specified period, regardless of whether they stayed through the merger period. Thus, this case raises challenges to a different benefit plan—one which pays benefits to a different group of employees-from the benefit plan at issue in *Hestetune* and *Chriske*.

Admittedly, *Hestetune* and *Chriske* did challenge the SERP insofar as it diminished severance benefits by the amount of a retiree's pension benefits. But this factual overlap is minimal: In both cases, the plaintiffs took the amount of their pension as an exogenous factor; neither case raised any factual issue pertaining to the amount of pension benefits or how that amount was determined. This case, in contrast, is solely about the amount of the plaintiffs' pension benefits and how they are determined.

Similarly, the fact that the SERP somehow modified the pension plan is an insufficient factual overlap on which to base a finding of res judicata. Neither the SERP itself nor the SERP modifications to the pension plan are at issue in this case—or are even discussed by the parties. In fact, the defendants' counsel admitted at oral argument that there was no direct interaction between the SERP and the pension plan for the six named plaintiffs in this case. Thus, although the SERP and the pension plan appear, at least peripherally, in all three cases, this case challenges a completely distinct and separate employee benefit plan from that challenged in *Hestetune* and *Chriske*.

Second, the claims in this case involve different acts by different parties from the claims in *Hestetune* and *Chriske*. Because *Hestetune* and *Chriske* challenged the explicit terms of the SERP, the claims in those cases arose when the AMC board implemented the SERP on May 19, 1987, before the merger between AMC and Chrysler. *Hestetune v. Chrysler*, No. 89 C 1211, Order at 2, 1992 WL 430673 (E.D.Wis. Sept. 8, 1992). In fact, Chrysler was a defendant in those two cases only because it was the successor to AMC as fiduciary and administrator of AMC's employee benefit plans. In contrast, the present case challenges the manner in which Chrysler administered the pension plan after the merger.

Similarly, although both *Chriske* and the present case allege similar types of ERISA violations, the violations in these two cases arose out of different acts at different times by different parties. The ERISA violations alleged in *Chriske* all pertained to the explicit terms of the SERP. Each of these violations—and hence, all the injuries complained of in *Chriske*—occurred when the AMC board implemented the SERP. In contrast,

the ERISA violations alleged in this case pertain not to the explicit terms of any plan, but rather only to Chrysler's alleged policy in administering AMC's severance plan and to statements in the White Book that erroneously informed pensioners that their pensions would be reduced on a $2–for–$1 basis. Thus, although the types of violations alleged in the two cases are similar, the factual predicates for the violations in the two cases are completely different.

Finally, Chrysler maintains that "a central claim in [the present case], *Chriske* and *Hestetune* is that the White Book [the] defendants distributed ... was misleading and/or inaccurate." Appellees' Br. at 13. We think this argument greatly overstates the importance of the White Book in *Hestetune* and *Chriske*. In those cases, the White Book was offered merely as evidence of the terms of the SERP and the severance plan; it was not introduced as the basis for the claim. In this case, in contrast, allegedly false or misleading statements in the White Book are themselves one of the bases for the plaintiffs' claim. Thus, the White Book arises in the three cases only to the extent that it is evidence in all three. As with the pension plan, the White Book played too marginal a role in *Hestetune* and *Chriske* to bar this suit as res judicata.

When examined at an appropriate level of specificity, the factual allegations raised in the present case are sufficiently distinct from those raised in *Hestetune* and *Chriske* to preclude finding the present case barred. Thus, we cannot agree with the district court that summary judgment in Chrysler's favor is warranted on that ground.

**B.  *The Merits of the Plaintiffs' Case***

Chrysler urges that, in the alternative, we may nonetheless affirm the district court's grant of summary judgment because the plaintiffs have failed to come forward with any evidence proving that they are entitled to relief. We have no doubt of our authority to address this alternate ground. The issues were briefed fully by both sides in the district court; it was only after the district court granted the motion for summary judgment on the ground of res judicata that it denied this alternate ground as moot.[5]

We review cross-motions for summary judgment de novo. *Bagdonas v. Department of Treasury*, 93 F.3d 422, 425 (7th Cir.1996). Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate only in instances in which the record demonstrates that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477

---

**5.** We cannot accept therefore the plaintiffs' submission that it would be "extraordinary, if not unprecedented" for this court to consider Chrysler's summary judgment argument. The cases upon which it relies do not support such an assertion. These authorities, *Morgan Guar. Trust Co. v. Martin*, 466 F.2d 593 (7th Cir.1972), *Burke v. Ernest W. Hahn, Inc.*, 592 F.2d 542 (9th Cir. 1979), and *First Nat'l Bank v. Lincoln Nat'l Life Ins. Co.*, 824 F.2d 277 (3d Cir.1987), involved the question whether an appellate court ought to direct summary judgment in favor of a party for whom judgment had not been granted in the district court. That issue is plainly not present here. Rather, this is the far more prosaic situation in which the district court granted summary judgment, and on appeal the appellee offers two grounds—one relied upon by the district court, one not—for affirming the lower court's decision. We have stated many times our authority to affirm a district court's decision for any reason adequately supported by the record. *See, e.g., Bombard v. Fort Wayne Newspapers, Inc.*, 92 F.3d 560, 562 (7th Cir.1996); *MCM Partners, Inc. v. Andrews–Bartlett & Assocs.*, 62 F.3d 967, 981

(7th Cir.1995); *Lawshe v. Simpson*, 16 F.3d 1475, 1483 (7th Cir.1994). The only prerequisite to our affirming on such an alternative ground is that the non-moving party had an opportunity in the district court to submit affidavits or other evidence and to contest the issue. *Williams v. United States Steel*, 70 F.3d 944, 947 (7th Cir. 1995); *Reed v. AMAX Coal Co.*, 971 F.2d 1295, 1299 (7th Cir.1992); *Travelers Ins. Co. v. Transport Ins. Co.*, 787 F.2d 1133, 1137 (7th Cir.1986); *Box v. A & P Tea Co.*, 772 F.2d 1372, 1376 (7th Cir.1985), *cert. denied*, 478 U.S. 1010, 106 S.Ct. 3311, 92 L.Ed.2d 724 (1986). That requirement is certainly satisfied here; the plaintiffs not only responded to Chrysler's motion for summary judgment with briefs and evidence, but also submitted their own motion for summary judgment.

Nor can we accept the plaintiffs' contention that they will be prejudiced if we consider the alternate grounds urged by Chrysler because the plaintiffs then will be denied a hearing on their motion for summary judgment. This argument has no merit. If Chrysler is entitled to summary judgment, the plaintiffs are not so entitled.

U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). With cross-motions, our review of the record requires that we construe all inferences in favor of the party against whom the motion under consideration is made. *I.A.E., Inc. v. Shaver*, 74 F.3d 768, 774 (7th Cir.1996).

### 1.

■ Three of the plaintiffs' counts can be addressed summarily. Their fifth count is for an implied right of action for "deceit and misrepresentation," which alleged that the White Book is "false and misleading." As a state common law fraud claim, such an assertion would be preempted by ERISA.[6] The plaintiffs concede as much, but argue that ERISA contains an "implied" right of action for deceit and misrepresentation. We cannot agree. Indeed, ERISA contains an explicit requirement that summary plan descriptions "shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." ERISA § 102(a)(1), 29 U.S.C. § 1022(a)(1). To the extent any plan participant or beneficiary is harmed by a plan administrator's violation of this section, ERISA § 502, 29 U.S.C. § 1132, grants that beneficiary a right of action to recover any benefits due him and to enjoin the act or practice which violates ERISA or the terms of the plan. Indeed, this is precisely what the plaintiffs allege in their second count.

Under these circumstances, we cannot say that there is any basis for a claim premised on an implied right of action. Put simply, this situation is not a case in which we must "fill the interstices of congressional enactments with federal common law to find a cause of action," *Pappas v. Buck Consultants, Inc.*, 923 F.2d 531, 540 (7th Cir.1991);

there is no gap to fill. Accordingly, we need not imply any right of action. Chrysler is entitled to summary judgment on the plaintiffs' fifth count.

The plaintiffs also allege interference with rights protected under ERISA in violation of ERISA § 510, 29 U.S.C. § 1140. But § 510 applies only in instances in which an employer wrongfully alters the employment relationship to prevent benefit rights from vesting.[7] The plaintiffs make no such allegation in this case, nor do they present any evidence that would substantiate such a claim. Summary judgment was properly entered on this count.

■ The plaintiffs also allege a violation of ERISA § 406, which prohibits self-dealing transactions. They maintain that Chrysler published false or misleading plan information and failed to administer the plan properly, and that the result of that action was the avoidance of paying out benefits lawfully due under the plan. However, there is no "transaction" here within the meaning of § 406. *Lockheed Corp. v. Spink*, — U.S. —, ———–——, 116 S.Ct. 1783, 1790–91, 135 L.Ed.2d 153 (1996). Therefore, summary judgment was properly entered on this count as well.

### 2.

■ We now turn to the plaintiffs' first count: their allegation that Chrysler has failed to administer the pension plan in accordance with the documents and instruments governing the plan. The plaintiffs allege three ways that Chrysler failed properly to administer the plan: (a) by reducing Early Retirement Supplements on a $2–for–$1 basis when the pension plan authorizes Chrysler to reduce benefits only on a $1–for–$1 basis; (b) by reducing Early Retirement Supplements when the pension plan authorizes Chrysler to reduce only "temporary

**6.** *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45, 107 S.Ct. 1549, 1551–52, 95 L.Ed.2d 39 (1987); *Lister v. Stark*, 890 F.2d 941, 944 (7th Cir.1989), *cert. denied*, 498 U.S. 1011, 111 S.Ct. 579, 112 L.Ed.2d 584 (1990); *Reilly v. Blue Cross & Blue Shield United*, 846 F.2d 416, 426 (7th Cir.), *cert. denied*, 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988).

**7.** *Teumer v. General Motors Corp.*, 34 F.3d 542, 545 (7th Cir.1994); *McGath v. Auto–Body North Shore, Inc.*, 7 F.3d 665, 669 (7th Cir.1993); *Deeming v. American Standard, Inc.*, 905 F.2d 1124, 1127 (7th Cir.1990).

Supplements"; and (c) by carrying over penalties from one year to the next.

### a.

We address first the plaintiffs' claim relating to the $2–for–$1 penalty. Chrysler submitted the affidavit of K.C. Hortop, Senior Staff Counsel for Chrysler. Mr. Hortop stated that no retiree was ever actually subjected to the $2–for–$1 reduction. The plaintiffs have failed to come forward with any evidence to the contrary. In their motion for summary judgment, the plaintiffs did include several affidavits and documents from various former AMC employees—Donald Wiese, Joan Richio, David Tianen and V. Haubrich. Nonetheless, this evidence is insufficient to create a material question of fact on this issue. The affidavits and documents submitted fail to show that any retiree actually had his or her pension benefits reduced on the $2–for–$1 basis; at most, the evidence shows that several retirees were erroneously informed of that possibility.[8] More basically, none of this evidence relates to any of the six named plaintiffs. In the absence of any class certification, only the six named plaintiffs are before this court.[9] In order to avoid summary judgment, these plaintiffs must show some injury to themselves.

The plaintiffs also submitted the affidavit of their counsel, Richard FitzSimmons, but this affidavit has no evidentiary value. See Fed.R.Civ.P. 56(e); Fed.R.Evid. 602. It does not state that any of the plaintiffs have had their pensions reduced under the $2–for–$1 reduction. To raise a triable question of fact, the plaintiffs must come forward with evidence of some injury to them. The plaintiffs have failed to do so.

**8.** The documents relative to David Tianen include a worksheet calculating the $2–for–$1 reduction for his excess additional income. But this worksheet does not refute the statement in Mr. Hortop's affidavit that "[a]lthough calculations were . . . made to apply the [reduction] on a 2–for–1 basis for two retirees, only a 1–for–1 reduction was ultimately made to their [pension] supplements." Hortop Affidavit at para. 3. In the absence of an affidavit from Mr. Tianen stating that his pension supplement actually was reduced on a $2–for–$1 basis, this worksheet

### b.

Mr. Hortop's affidavit does state that six retirees did have their pension supplements reduced due to excess additional income on a $1–for–$1 basis. Neither the plaintiffs nor the defendants identify these six retirees. Nevertheless, when we consider a motion for summary judgment, we construe all factual ambiguities in favor of the non-moving party; therefore, we assume that some or all of the six named plaintiffs were among this number. The plaintiffs claim that even this $1–for–$1 reduction of their Early Retirement Supplements was impermissible under the pension plan. In this regard, the plaintiffs first submit that the pension plan allows a $1–for–$1 reduction of only "temporary Supplements," and that Early Retirement Supplements are not "temporary Supplements." The plaintiffs' position seems to be that a "temporary Supplement" is a specific contractual term, and because the pension plan never defines "temporary Supplements" to include Early Retirement Supplements—indeed, never defines "temporary Supplements" at all, for that matter—Chrysler's reduction of Early Retirement Supplements violates the provisions of the pension plan.

▬ We cannot accept this contention. Federal common law rules of contract interpretation determine the meaning of the terms of an employee benefit plan. *Brewer v. Protexall, Inc.,* 50 F.3d 453, 457 (7th Cir. 1995). Those rules direct us to interpret plan terms "in an ordinary and popular sense as would a person of average intelligence and experience." *Id.* (citations and internal quotations omitted). Employing this methodology, we see no reason for concluding that a "temporary Supplement" is a specific contractual term that cannot be given meaning absent specific definition within the contract.

does not raise a material question of fact sufficient to forestall summary judgment.

**9.** *Harold Washington Party v. Cook County, Ill. Democratic Party,* 984 F.2d 875, 878–79 (7th Cir.), *cert. denied,* 510 U.S. 825, 114 S.Ct. 86, 126 L.Ed.2d 54 (1993); *Rutan v. Republican Party,* 868 F.2d 943, 947 (7th Cir.1989) (en banc), *aff'd. in part and rev'd in part on other grounds,* 497 U.S. 62, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990).

Rather, "temporary" ought to be assigned its usual role as an adjective that refers to all Supplements that are not permanent. This reading is buttressed by the fact that the terms "Interim Supplement," "Early Retirement Supplement," "Lifetime Supplement" and "Age–Service Supplement"-different types of Supplements explicitly defined in the pension plan and its appendix—are always written with capital letters, whereas the term "temporary" is usually written in lowercase. Early Retirement Supplements are functionally temporary. They last only until a retiree reaches age 62, and therefore are temporary Supplements.

██ Alternatively, the plaintiffs contend that the provision in the pension plan allowing the $1–for$1 reduction was void. They contend that, whenever there is an inconsistency between the provisions of a benefit plan and the provisions in a summary plan description, the latter must control. They further contend that, whenever the provisions contained in a summary plan description have no basis in the plan itself, the offending provisions in the summary plan description are simply void, and hence there is no provision in effect. In the context of this case, the plaintiffs therefore maintain that the provision in the pension plan allowing for a $1–for–$1 reduction in temporary Supplements is ineffective because it contradicts the terms stated in the White Book. They further maintain that the provision in the White Book allowing for a $2–for$1 reduction in temporary Supplements is also ineffective because there is no authority in the plan for such a reduction.

We cannot accept the plaintiffs' position. All of the cases the plaintiffs cite in support of their argument—that to the extent that the terms of a summary plan description contradict the provisions of the plan itself, the former control—are cases in which employees relied to their detriment on the terms in a summary plan description that were more favorable to them than the actual provisions of the benefit plan.[10] The courts in those cases held that the employers were obligated to honor the more favorable terms stated in the summary plan descriptions. Here, in contrast, the terms stated in the White Book, the $2–for–$1 penalty, are more detrimental to employees than the $1–for–$1 penalty authorized by the plan. Under these circumstances, the pension plan still entitled Chrysler to reduce Early Retirement Supplements on a $1–for–$1 basis for excess additional income.

Accordingly, even if the plaintiffs were among the six retirees who had their Supplements reduced on a $1–for–$1 basis, these penalties do not state a cause of action for failing to administer the pension plan according to the documents and instruments governing the plan.

### c.

██ The plaintiffs maintain that the pension plan does not authorize Chrysler to carry over penalties incurred in one year to subsequent years. This argument is premised on a misreading of the relevant provision in the pension plan. The plan authorizes Chrysler to impose "a penalty equal to the amount by which such [additional] earnings exceeds [sic] the amount permitted, but not to exceed the amount of the temporary Supplement otherwise payable in the calendar year in which he has such excess earnings." Thus, if a retiree with a $12,000 annual Early Retirement Supplement earned $50,000 in outside income in a year in which the cap was $10,000, his excess additional income would be $40,000 (the difference between his additional earnings and the cap). Nonetheless, the maximum penalty Chrysler could impose would be $12,000, the "amount of the temporary Supplement otherwise payable in the calendar year in which he has such excess earnings." Accordingly, the amount of the penalty is limited to the amount of the temporary Supplement for the calendar year.

This provision cannot be read to limit to a calendar year the pension plan's ability to

10. In support of their position, the plaintiffs cite *Heidgerd v. Olin Corp.*, 906 F.2d 903 (2d Cir. 1990); *Edwards v. State Farm Mut. Auto. Ins. Co.*, 851 F.2d 134 (6th Cir.1988); *McKnight v. Southern Life & Health Ins. Co.*, 758 F.2d 1566 (11th Cir.1985); *Blau v. Del Monte Corp.*, 748 F.2d 1348 (9th Cir.1984), *cert. denied*, 474 U.S. 865, 106 S.Ct. 183, 88 L.Ed.2d 152 (1985); *Morse v. Stanley*, 732 F.2d 1139 (2d Cir.1984); *Gors v. Venoy Palmer Mkt., Inc.*, 578 F.Supp. 365 (E.D.Mich.1984); and *Hillis v. Waukesha Title Co.*, 576 F.Supp. 1103 (E.D.Wis.1983).

recover the penalty. Rather, the plan permits Chrysler to "charge[ ] against each succeeding monthly temporary Supplement which the [retiree] would otherwise be entitled to receive *until the full amount of such penalty is satisfied.*" (emphasis added). Nowhere does the plan limit the recovery of the penalty to the calendar year in which the retiree earns excess additional income.

Thus, the plaintiffs have failed to show that any retiree, let alone any plaintiff in this case, has had his or her Early Retirement Supplement reduced on a $2–for–$1 basis. Moreover, the pension plan authorizes Chrysler to impose a $1–for–$1 penalty for excess additional income and to charge that penalty against succeeding monthly supplement benefits until the full penalty is recovered, even if the penalty carries over from one year to the next. The plaintiffs have failed to demonstrate that there is any material question of fact as to whether Chrysler administered the pension plan according to plan documents and instruments, and thus, Chrysler is entitled to summary judgment on the plaintiffs' first count.

### 3.

We turn finally to the plaintiffs' sole remaining claim: that Chrysler published false and misleading information in the White Book. Chrysler readily admits that the White Book contained erroneous information, but submits that because the plaintiffs received all the benefits to which they were entitled under the pension plan, despite the inaccuracies in the White Book, the plaintiffs have not stated a cause of action under ERISA.

■ The only question we must answer in the context of this case is whether erroneous information in a summary plan description, standing alone, states a cause of action under ERISA.[11] It does not. We have repeatedly held that technical violations of ERISA's notification requirements, without a showing of bad faith,[12] active concealment or detrimental reliance, do not state a cause of action.[13] Accordingly, Chrysler is entitled to summary judgment on the plaintiffs' second cause of action.

### Conclusion

Although the plaintiffs' present lawsuit is not barred as res judicata by their previous suits against the defendants, the plaintiffs have failed to produce any evidence demonstrating they are entitled to relief for the

11. This case raises no serious question of whether, even if the plaintiffs received all the benefits they were due under the pension plan, they might nonetheless have a cause of action for detrimental reliance based upon opportunities they forwent due to the erroneous information in the White Book (e.g., if the plaintiffs refrained from taking jobs after they retired for fear of being penalized on a $2–for–$1 basis). Although the plaintiffs did raise such allegations in their complaint, and made similar assertions in their Motion for Partial Summary Judgment and their Brief in Opposition to Defendants' Motion for Summary Judgment, they have provided no admissible evidence to substantiate them. The affidavit of the plaintiffs' attorney, Richard FitzSimmons, contains no admissible evidence and therefore cannot create a triable question of fact. Of the affidavits from the other four AMC employees—Wiese, Richio, Tianen and Haubrich—only one, Mr. Wiese's affidavit, even obliquely suggests that he forwent any opportunities or benefits based on the erroneous $2–for–$1 information in the White Book; and, in any event, none is from a plaintiff in this case.

12. Although the plaintiffs assert that Chrysler's actions, in describing the erroneous $2–for–$1

penalty in the White Book and in repeating this information in other contexts, were willful and intentional, they submit no evidence to substantiate such a claim. In fact, no employee was ever actually subjected to the $2–for–$1 penalty, and within six months of the instigation of this lawsuit, Chrysler sent a letter to the affected retirees informing them that they were subject only to the $1–for–$1 penalty provided for in the pension plan. In light of these facts, we cannot say that Chrysler's actions were in bad faith or exhibited active concealment.

13. *Panaras v. Liquid Carbonic Indus. Corp.*, 74 F.3d 786, 789 (7th Cir.1996); *Meredith v. Allsteel, Inc.*, 11 F.3d 1354, 1360 (7th Cir.1993), *overruled on other grounds by Ahng v. Allsteel, Inc.*, 96 F.3d 1033 (7th Cir.1996); *Kreutzer v. A.O. Smith Corp.*, 951 F.2d 739, 743–44 (7th Cir.1991); *see also Murphy v. Keystone Steel & Wire Co.*, 61 F.3d 560, 569 (7th Cir.1995) (citing *Kreutzer*, holding that technical violation of ERISA requirements pertaining to amendments of employee benefit plans do not justify relief absent bad faith, active concealment, or detrimental reliance).

claims they bring. The defendants are entitled to summary judgment. Accordingly, the judgment of the district court is affirmed.

AFFIRMED.