**Charles HERTER, Plaintiff,**

v.

**DICK'S CLOTHING & SPORTING GOODS, INC., et al. Defendants.**

**No. 98 Civ. 6405(CM).**

United States District Court, S.D. New York.

Aug. 5, 1999.

Benjamin Ostrer, Benjamin, Ostrer & Associates, P.C., Chester, NY, for Charles Herter, plaintiff.

Margaret Armstrong Weiner, Steven Baderian, Jackson, Lewis, Schnitzler & Krupman, White Plains, NY, Paul T. Sheppard, Hinman, Howard & Kattell, LLP, Binghamton, NY, for Dick's Clothing & Sporting Goods, Inc., defendant.

## MEMORANDUM DECISION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DISMISSING THE AMENDED COMPLAINT

McMAHON, District Judge.

Plaintiff brought this action pursuant to the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq., alleging that Defendants denied him health coverage pursuant to a pre-existing condition limitation in Defendants' self-funded health plan. Plaintiff alleges he was not on notice of the limitation because Defendants failed to provide him with plan documents and failed to verbally notify him of such. Plaintiff seeks to recover despite the fact that the notice of a pre-existing condition limitation was clearly on the signature page of the health insurance application he signed, admittedly without reading. Plaintiff also seeks recovery under theories of promissory and equitable estoppel, claiming that he detrimentally relied on Defendants' oral assertions of coverage, which induced him to both drop his former medical coverage [1] and to accept employment at Defendants' Middletown, N.Y. store.

Defendants have moved for summary judgment, claiming that: (1) plaintiff cannot sustain a cause of action for violation of ERISA's disclosure provisions, 29 U.S.C. §§ 1021–1022, and (2) plaintiff fails to state a cause of action under either estoppel theory.

The following material facts are undisputed. Plaintiff applied for and interviewed for a position at the Middletown, N.Y. Dick's retail store in July 1996. At his second employment interview, Plaintiff interviewed with Audrey Tuttle, the then-manager of the Middletown store's Footwear and Clothing Department. During that second interview, Plaintiff asked Ms. Tuttle if Dick's provided health coverage. Tuttle replied that Dick's had "very good [health] coverage" and that Plaintiff would be "covered from the day he started working." See Deposition of Charles Herter ("Herter Dep."), attached as Ex. D to the Affidavit of Margaret Armstrong Weiner ("Weiner Aff."), at 58–59. At the time, Plaintiff did not ask what "very good coverage" meant specifically; nor did he provide information concerning his health history. See Herter Dep. at 58–59; Deposition of Audrey Tuttle ("Tuttle Dep."), attached as Ex. F to Weiner Aff., at 84–85, 92–93. As manager of the Footwear and Clothing Department of the Middletown store, Audrey Tuttle was not vested with the authority to administer or analyze medical coverage under Dick's self-funded Employee Medical Benefit Plan (the "Plan"). She never informed Plaintiff she had any human resources or benefits functions, never informed Plaintiff she was a Plan fiduciary, and never informed Plaintiff she was a Plan representative. See Herter Dep. at 95, 166; Tuttle Dep. at 25, 56.

Plaintiff was hired and began work on August 7, 1996 as a "Footwear Associate," selling athletic footwear at the Dick's Middletown store. On August 22, 1996, Plaintiff filled out and signed an application for medical and dental insurance coverage, an application he completed without reading. See Herter Dep. at 97. On September 4, 1996, for a second time, Plaintiff filled out and signed an application for medical and dental insurance coverage, an application he again completed without reading. See Herter Dep. at 104. Plaintiff has testified that he had no interest in reading about

---

1. Plaintiff previously had COBRA insurance, which he claims would have covered the tri-ple-bypass surgery he underwent.

his benefits when he was hired. *See* Herter Dep. at 119. No one at Dick's told Plaintiff not to read either of the two applications. *See* Herter Dep. at 106.

In their Statement of Undisputed Facts Pursuant to Local Rule 56.1, Defendants state:

"46. The two page [health and dental insurance] application clearly stated the following language in bold and capital letters above Plaintiff's signature:

PLEASE READ CAREFULLY

I represent that all answers given are full, complete and true to the best of my knowledge, information and belief. I authorize my employer to deduct contributions from my earnings for the coverage(s) I have elected. **I understand that** 1) the answers given will be the basis of any coverage provided and this enrollment form will be part of the plan document; **2) coverage, if approved may be subject to the pre-existing condition limitation in the Plan document**...."

In his Statement of Material Facts Pursuant to Local Rule 56.1, Plaintiff disputes this proposed statement of fact. *See* Plaintiff's Statement of Material Facts ¶ 53. Having reviewed both the August 22, 1996 and the September 4, 1996 applications for health and dental coverage, I find that both applications contain, at the top of the signature page, the paragraph contained in Defendants' Statement of Undisputed Fact ¶ 46. "PLEASE READ CAREFULLY" is centered at the top of the second page of the application and precedes a paragraph that lays out the preexisting condition limitation in what appears to be standard 12–point font. It is exactly what Defendants claim it to be—a

clear statement. Therefore, this Court adopts ¶ 46.

At some point after beginning his employment at Dick's, Plaintiff voluntarily canceled the COBRA health benefits he had held through his former employer. *See* Herter Dep. at 202. At his deposition, Plaintiff testified that he canceled the COBRA coverage based solely on Tuttle's statement that he would be covered from the first day of his employment with Dick's. *See* Herter Dep. at 202.

In March 1997, Plaintiff underwent coronary triple bypass surgery, an operation that cost in excess of $50,000. Plaintiff submitted his claims for medical benefits to former defendant Fortis,[2] the third party administrator of the Plan. In a letter dated July 29, 1997, the Claims Department at Fortis denied Plaintiff reimbursement, stating, "This policy excludes coverage for any conditions existing for a specified period of time prior to the effective date.... The information we have indicates that treatment for ANGINA was received MAY 1996." *See* July 29, 1997 claim denial, attached as Ex. M to Weiner Aff.

Plaintiff promptly appealed the denial of coverage, stating, "I did not have an Angina attack March 20th, [sic] I went in the hospital March 18th for cardiac catherization [sic] and they determined a triple bypass was necessary." *See* August 4, 1997 appeal letter, attached as Ex. N to Weiner Aff. Fortis subsequently denied this appeal, stating that based on the medication continuously prescribed to Plaintiff from 1994 until 1997 for his heart problems, it determined Plaintiff's heart trouble was a pre-existing condition within the limitations of the Plan. *See* September 5, 1997 response to appeal, attached as Ex. O to Weiner Aff. Fortis denied Plaintiff's subsequent request for reconsideration on the

**2.** In a Mutual Stipulation so ordered by this Court, the parties stipulated: "This action is hereby withdrawn with prejudice as against defendant Corporate Benefit Services of America, Inc., which acted through its division Fortis Self–Funded Administrative Services, and which was improperly named in this action as Fortis Benefits Insurance Company...." *See* Mutual Stipulation so ordered May 21, 1999, attached as Ex. G to Weiner Aff., ¶ 1.

ground that the material submitted with it was a duplication of the material previously submitted and reviewed. *See* February 3, 1998 denial of reconsideration, attached as Ex. P to Weiner Aff.

On September 19, 1997, Audrey Tuttle composed and signed a short unsolicited letter directed to "To Whom It May Concern" regarding Plaintiff's situation. *See* September 19, 1997 letter, attached as Ex. D to Affidavit of Charles Herter. At her deposition, Ms. Tuttle testified that she drafted the letter "in case he [Plaintiff] needed it." In the letter, Ms. Tuttle stated that a few days before she finished her tenure at Dick's, store manager Jerry Williams advised her that he had met with Linda Hathaway of Dick's corporate Human Resources and discussed Plaintiff's ongoing frustrations regarding the denials of coverage by Fortis. The letter stated that, because Plaintiff was being considered for promotion to Footwear Manager, Williams and Hathaway together decided to "take care of everything" regarding Plaintiff's problems. The letter further stated that Tuttle was advised to "tell Chip [Plaintiff] not to worry [sic] Dick's would take care of everything."

In the Mutual Stipulation so ordered by this Court on May 21, 1999, Plaintiff stipulated that based on his prior medical record, the denial of coverage by Defendants was "reasonable and supported by substantial evidence on the record, within the meaning of 29 U.S.C. § 1132(a)(1)(B)." *See* Mutual Stipulation, attached as Ex. G to Weiner Aff., ¶ 3.

*ERISA Disclosure Claim*

As his first cause of action, Plaintiff claims that he is entitled to relief because of Defendants' failure to provide him with plan documents pursuant to the "Reporting and Disclosure" sections of the Regulatory Provisions of ERISA. *See* 29 U.S.C §§ 1021–1022. Section 1021 provides that a summary plan description ("SPD") must be furnished to each participant covered under an ERISA plan and to any beneficiary receiving benefits under such plan.

*See* 29 U.S.C. § 1021(a)(1). Section 1022 outlines the statutory requirements and contents for an SPD, adding that it "shall be written in a manner calculated to be understood by the average plan participant, and be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." *See* 29 U.S.C. § 1022(a).

Plaintiff argues that because Defendants failed to provide him with plan documents, he was therefore not on notice of the terms of the plan, including the pre-existing condition limitation, and should not be bound by the limitation. Plaintiff contends there exists a question of fact as to the sufficiency of notice given to Plaintiff. Plaintiff is incorrect.

■ Technical violations of ERISA's disclosure requirements do not themselves create a cause of action. *See Andersen v. Chrysler Corp.*, 99 F.3d 846, 859 (7th Cir. 1996). A plaintiff must show more than mere technical or procedural violations. In fact, in order to recover for a technical violation of the ERISA disclosure requirements, a plaintiff must demonstrate extraordinary circumstances, such as "bad faith, active concealment or detrimental reliance." *See id.* at 859.

■ Plaintiff attempts to show bad faith by alleging that (1) Dick's failed to provide him with Plan documents; (2) Dick's failed to have a written policy regarding the distribution of SPDs; and (3) Dick's permitted Audrey Tuttle to advise potential employees about health benefits. However, even if true, these actions do not rise to the level of "extraordinary circumstances" for which the courts have permitted relief under §§ 1021 and 1022 of ERISA. Plaintiff himself testified at his deposition that he never came into contact with any person at Dick's or at Fortis who he thought harbored bad faith towards him. *See* Herter Dep. at 196. Furthermore, there is absolutely no evidence of active concealment of Plan literature that could justify

the relief requested. It is undisputed that no one at Dick's refused to provide Plaintiff with medical plan documentation. Defendants actually provided Plaintiff with at least two documents—the aforementioned health insurance applications—both of which expressly warned the Plaintiff of the pre-existing condition limitation to any coverage Dick's might provide. Plaintiff's failure to read either of the health insurance application forms does not transform Dick's failure to comply with the technical provisions of ERISA into bad faith or active concealment.

Moreover, although Plaintiff testified that he never got an SPD, that is not uncontested. Lynda Lee Hower of Dick's Human Resources testified at her deposition that, though she did not mail the SPD directly to Plaintiff, she sent a copy intended for Plaintiff to the manager of the Middletown store.

Ultimately, there is no genuine issue of material fact regarding the sufficiency of notice, and therefore summary judgment is appropriate on Plaintiff's first cause of action. Defendants certainly did not conceal the Plan's pre-existing condition limitation from Plaintiff. The statutory purpose of the SPD is to "reasonably apprise such participants and beneficiaries of their rights and obligations under the plan...." *See* 29 U.S.C. § 1022(a). The two health applications did just that regarding the pre-existing condition limitation.

*ERISA Estoppel Claim*

As his third cause of action,[3] Plaintiff claims that the doctrines of promissory and equitable estoppel under ERISA prevent Defendants from denying him health benefits on the basis of the pre-existing limitation condition. In his Amended Complaint, Plaintiff states that he "detrimentally and justifiably relied on [D]efendants' representations that he was covered and entitled to benefits under the Plan."

*See* Amended Complaint ¶ 60. For the reasons stated below, Defendant is also entitled to summary judgment on the third cause of action.

In this Circuit, "the principles of estoppel apply in ERISA cases only under extraordinary circumstances." *See Bonovich v. Knights of Columbus,* 146 F.3d 57, 62 (2d Cir.1998) (*citing Schonholz v. Long Island Jewish Med. Ctr.,* 87 F.3d 72, 78 (2d Cir.1996)). In *Bonovich,* the Second Circuit upheld the district court's statement of the following principle of law—the elements of a promissory estoppel claim in the context of an ERISA claim are: (1) a promise, (2) reliance on a promise, (3) injury caused by the reliance, and (4) an injustice if the promise is not enforced. *Id.* at 62. Furthermore, "for the purposes of ERISA, a plaintiff must demonstrate a promise that the defendant reasonably should have expected to induce action or forbearance on the plaintiff's part." *Bonovich,* 146 F.3d at 62–63.

There is no evidence in the record that this case involved "extraordinary circumstances," and Plaintiff has not demonstrated all the required elements for a promissory estoppel claim. First, nowhere in the record is there any indication that Tuttle promised Plaintiff universal health coverage without limitation. What is in the record is the equivocal statement made by Tuttle that Dick's had "very good coverage" and that Plaintiff would be covered starting on his first day on the job. Dick's probably did have "very good coverage" from day one. However, that does not constitute a promise of anything, let alone that pre-existing conditions are covered.

Second, there can be no finding of justifiable reliance on this record. Plaintiff contends that based on Tuttle's statements, he accepted employment at Dick's and canceled his COBRA benefits held

**3.** The essence of Plaintiff's second cause of action was that Defendants and former defendant Fortis arbitrarily and capriciously denied Plaintiff benefits. However, Plaintiff has stipulated that the decision to deny benefits was reasonable. *See* Plaintiff's Statement of Material Fact ¶ 14. Plaintiff's second cause of action is therefore summarily dismissed.

through his former employer. However, the record contains *two* signed health benefits applications with the aforementioned "PLEASE READ CAREFULLY" paragraph that unequivocally laid out the pre-existing condition limitation. Based on this evidence, no reasonable jury could find that Plaintiff reasonably relied on his conversation with Audrey Tuttle. Since Plaintiff has presented insufficient evidence on two key elements of a promissory estoppel claim under ERISA—a promise and reasonable reliance—Defendant is entitled to summary judgment regarding the part of the claim grounded in promissory estoppel.

■ Defendant is also entitled to summary judgment on the portion of Plaintiff's claim grounded in equitable estoppel. In this Circuit, the elements of equitable estoppel are: (1) a material misrepresentation, (2) reasonable reliance, and (3) injury as a result of the reasonable reliance. *See Lee v. Burkhart*, 991 F.2d 1004, 1009 (2d Cir.1993); *Momentum Mfg. Corp. v. Employee Creditors Comm. (In re Momentum Mfg. Corp.)*, 25 F.3d 1132, 1136 (2d Cir.1994). Plaintiff alleges that Tuttle's statement that Dick's provided "very good coverage" induced him to accept employment and to cancel his COBRA coverage. However, Plaintiff has produced no evidence that Tuttle's statement was a misrepresentation of fact. In fact, it appears to the Court that Dick's does indeed provide very good coverage. *See* Employee Medical Benefit Plan, attached as Ex. L to Weiner Aff., at II. To be sure, that an insurance policy does not cover preexisting conditions does not make it bad coverage.

Moreover, reliance on Tuttle's general statement was not reasonable. Her words were too non-specific for Plaintiff to have based his actions on them. No rational trier of fact could find either that Audrey Tuttle's statement was a factual misrepresentation or that Plaintiff reasonably relied on it. Therefore, I must reject plaintiff's equitable estoppel claim.

■ Finally, Plaintiff asserts in opposition to the motion for summary judgment that Defendants' post-denial assurances to Plaintiff that his problems would be taken care of "was designed to retain [P]laintiff's employment with the false promise of paying his claims." *See* Plaintiff's Memorandum in Opposition to the Motion for Summary Judgment, at 23. In support of this claim, Plaintiff has submitted the September 19, 1997 letter of Audrey Tuttle. An unfulfilled promise made with the express purpose of inducing employment action on the part of an ERISA-protected employee does present "extraordinary circumstances" that will justify application of the doctrine of promissory estoppel in an ERISA action. *See Schonholz*, 87 F.3d at 72 (stating that a reneged-upon promise that induced an employee's resignation constitutes extraordinary circumstances). However, in order to recover, Plaintiff must demonstrate injury suffered from reliance on the alleged promise. Here, the alleged promise to pay benefits did not induce Plaintiff to do anything. He did not change position in reliance on the promise; he had canceled his COBRA benefits over a year before the alleged promise "to take care of everything" was made, and he incurred his medical costs six months before the alleged promise was made. Thus, Plaintiff has not presented evidence that he suffered any injury on account of his reliance on the alleged promise referred to in the September 19th letter.

This constitutes the decision and order of the Court.