Joel L. COLEMAN, Plaintiff,

v.

AEGON INSURANCE GROUP,
Defendant.

and

Stephen Haddon, Jeffrey Stearman, Alan Pardee, James E. Wooldridge, Dennis Vessels, Robin Aberg, Sandra Able, Michael Burns, Geneva Barbour, Scott Blair, Plaintiffs,

v.

Commonwealth General Corp.
et al., Defendants.

Civil Action Nos. 3:98–CV–759–H to 3:98–CV–762–H, 3:98–CV–770–H, 3:98–CV–786–H to 3:98–CV–789–H, 3:98–CV–026–H and 3:98–CV–351–H.

United States District Court,
W.D. Kentucky,
at Louisville.

Oct. 22, 1999.

F. Larkin Fore, Joseph C. Spalding, Fore, Miller & Schwartz, Louisville, KY, for Coleman, plaintiff.

Jeffrey D. Stamper, Connelly, Kaercher & Stamper, Louisville, KY, for Haddon, et al., plaintiffs.

Michael D. Risley, Stites & Harbison, Louisville, KY, for defendant.

## MEMORANDUM OPINION

HEYBURN, District Judge.

Each Plaintiff in these eleven cases alleges a denial of separation benefits under their employer's change-in-control plan in violation of the Employee Retirement Income Security Act of 1974 ("ERISA"). Each Plaintiff left his or her employment at Providian (now merged into Aegon) after a change in control and requested separation benefits. Providian's plan administrator determined that each left his or her job without "good reason," and refused to pay any benefits. Before reviewing the plan administrator's decision in each case, the Court must determine the proper standard of review under the applicable Providian ERISA plan. To do so, the Court must resolve the statutory, contractual, and equitable interplay between the ERISA plan itself and the most recent summary plan description.

## I.

The parties do not dispute the facts material to the Court's resolution of the standard of review. The change-in-control benefits plan at issue was first approved by Providian's Board of Directors on February 21, 1996, and was formally executed by the Chairman and CEO on June 3, 1996. Totaling ten pages, the original plan document was titled "Providian Corpora-tion Change in Control Plan and Summary Plan Description" (the "Plan"). As that title suggests, a single document served as both the fundamental benefit plan document and as the summary plan description required to be distributed to employees under 29 U.S.C. § 1022 (1994).

Under the Plan, certain management employees were entitled to severance benefits and outplacement services if (1) Providian terminated their employment for any reason, other than for disability or cause, or (2) the employee resigned their employment with "good reason." The Plan defined the term "good reason" extensively, but it failed to explain how Providian would administer the Plan or resolve disputes regarding its interpretation. It is undisputed that the Plan contained no grant of discretion to Providian or its administrators in making interpretative decisions. The Plan could be "amended in any respect by resolution duly adopted" by Providian's Board of Directors, but "the Plan shall not be subject to amendment . . . in connection with or in anticipation of a Change in Control."

Some time in mid-December of 1996, Providian published a second summary plan description, titled "Change in Control Highlights" (the "Second SPD").[1] To issue a summary plan description apparently does not require Board approval, and the Second SPD was issued without it. The Board did not amend the Plan itself. The Second SPD touted that "[t]his Summary Plan Description describes provisions of the Plan that are in effect as of February 21, 1996."[2] However, the SPD actually

---

1. Neither party alleges this "publication" date with any particularity, but Plaintiffs claim that Providian did not distribute the Plan to covered employees until at least December 30, 1996—the same day Providian announced its merger with Aegon USA. Defendants apparently do not deny that distribution occurred on or after this date. In fact, Defendants may not have distributed the Second SPD until March, 1997. *See* Letter to Providian Associates, Defendants' Response to Plaintiffs' Memorandum on the Applicable Standard of Review, Ex. A.

2. In addition to its claim of describing the Plan as it stood on February 21, 1996, the Second SPD attempted to defer·to the Plan in the event of a conflict between the two. The inside cover of the book containing the Second SPD states: "If statements in the Summary Plan Description appear to be inconsistent with the provisions of the Plan Documents . . . the formal provisions of these documents will control." Likewise, the book's Introduction states that "the information presented . . . is the Summary Plan De-

included some important items not present in the original Plan. Under a section called "Plan Administration," the Second SPD referred to a plan administrator position and invested the same with discretionary authority:

> In accordance with Section 503, Title I, of ERISA, the Plan Administrator shall designate one or more Named Fiduciaries (which may include itself) under the Plan, each with complete authority to review all denied claims for the benefits under the Plan with respect to which it has been designated Named Fiduciary. In the event any claim is made that any part of the Plan is ambiguous or questions arise concerning the meaning or intent of any of its terms, the Named Fiduciary shall have the sole authority and discretion to resolve all disputes regarding the interpretation. The decision of the Named Fiduciary shall be final, conclusive and binding as to all parties, and the Named Fiduciary shall be deemed to have properly exercised its authority, unless it has abused its discretion hereunder by acting arbitrarily and capriciously.

Second SPD at 367. Using language identical to that of the Plan itself, the Second SPD reiterated the Plan's restriction on amendments in anticipation of changes in control.

On December 30, 1996, Providian announced to employees and the public its intention to merge with Aegon USA. The parties agree that the merger effected a change in control.

## II.

■ In *Firestone Tire and Rubber Co. v. Bruch,* the Supreme Court analyzed at length the standard of review to be employed by federal courts when reviewing denials of benefits based upon plan inter-

pretations. *See* 489 U.S. 101, 108–15, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989). Analogizing ERISA plan interpretations to the traditional common law of trusts, the Court refused to apply an arbitrary and capricious standard as the default in ERISA benefit cases. Instead, the Court concluded that a "denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a *de novo* standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Id.* at 115, 109 S.Ct. 948.

■ Since *Bruch,* the Sixth Circuit has consistently held that the presence of discretionary authority cannot be inferred from the mere fact that decisions must be made about benefits and entitlements. To avoid *de novo* review, discretion must be affirmatively given to the fiduciary or plan administrator. *See Perry v. Simplicity Eng'g,* 900 F.2d 963, 965 (6th Cir.1990) (applying *de novo* standard "unless the benefit plan expressly gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms"); *see also Johnson v. Eaton Corp.,* 970 F.2d 1569, 1571 (6th Cir.1992); *Brown v. Ampco–Pittsburgh Corp.,* 876 F.2d 546, 550 (6th Cir.1989) ("Absent a clear grant of discretion to the administrator, application of the highly deferential arbitrary and capricious standard of review does not promote [ERISA's goals].").

■ Even under the Sixth Circuit's most lenient approach to establishing discretion, an ERISA plan must, at a minimum, endow some administrative entity with authority to determine Plaintiffs' eligibility for benefits and grant to that entity power to interpret and apply the plan. *See Johnson,* 970 F.2d at 1571–72. In this

scription only. Each of the following plans is supported by a legal Plan document that contains the governing provisions of the Plan." These statements are evidence of the Plan's fundamental relationship to the Sec-

ond SPD. Nevertheless, the Court does not find that these statements of deference determine conclusively which document should control the plan administrator's discretionary authority.

case, the original Plan does not confer the necessary discretion on Providian. It does not state who would interpret the Plan's language or how that would be done, much less grant to a plan administrator the discretion to construct the Plan's terms. Defendants do not seriously dispute this.

There is no doubt, however, that the Second SPD does purport to grant interpretative discretion to a plan administrator. What is much less clear is whether the Second SPD properly replaces the Plan and binds these Plaintiffs.

### III.

Summary plan descriptions are an important part of the ERISA statutory scheme, their principal purpose being the notification of employees of their rights as plan participants. To that end, 29 U.S.C. § 1022 (1994) requires that the summary "be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." *Id.* at § 1022(a). The whole point of the summary is to create an understandable communication of rights upon which employees may rely.

Because of the communicative purpose underlying the summary plan description, interpreting plan provisions is difficult when the plan and the summary say different things. When a plan and a summary seem to disagree, the courts have a strong tendency to reconcile them to one another whenever possible. *See Musto v. American General Corp.,* 861 F.2d 897, 905–06 (6th Cir.1988). In the present case, Defendants urge the Court to find no contradiction between the Plan's handling of discretionary authority and that of the Second SPD. They say that because the Plan granted no discretion, a later grant in the Second SPD cannot be in "conflict," and the Second SPD should govern. The Court finds this argument absolutely without merit: When the Second SPD confers

discretion not granted in the original Plan, the two are in conflict. In the Court's view, *Sprague v. General Motors Corporation,* 133 F.3d 388 (6th Cir.1998) (en banc), does not advance Defendants' proposition. In *Sprague,* the Sixth Circuit held that an "omission from the summary plan description does not, by negative implication, alter the terms of the plan itself." *Id.* at 401. This statement in no way supports a reciprocal conclusion that the absence of discretion in the actual Plan does not conflict with the later presence of discretion in the summary. Whereas a summary need not "include every detail of the thing it summarizes," *id.* at 401, the underlying Plan should include all important items in the summary. The Second SPD grants discretionary interpretative authority, and the actual Plan does not. Therefore, unless some principal of trust, equity, or ERISA law requires otherwise, the original Plan should govern.

 Conflicts between plans and summary plan descriptions are a staple of ERISA jurisprudence. The Sixth Circuit has addressed a number of different types of these conflicts. In *Edwards v. State Farm Mutual Automobile Insurance Company,* 851 F.2d 134 (6th Cir.1988), the company never published or distributed the actual benefit plan, and an employee relied on the summary when deciding to retire early. The company refused to pay benefits allowable by the summary but not due under the original plan. *See id.* at 135. The court found that the employer "should have realized that the explicit language of the Summary could or would have caused [the plaintiff] and similarly situated unsophisticated lay employees to rely upon [the employer's] inadvertant [*sic*] misrepresentation to their detriment." *Id.* at 136. It held that "statements in a summary plan are binding and if such statements conflict with those in the plan itself, the summary shall govern," since otherwise " '[u]nfairness will flow to the employee for reasonably relying on the summary booklet.' " *Id.* (*quoting*

*McKnight v. Southern Life and Health Ins. Co.,* 758 F.2d 1566, 1570 (11th Cir. 1985)). *Edwards* thus displays an equitable approach to resolution of plan/summary conflicts. The summary will trump the actual plan when employees could reasonably rely on the summary to their detriment, and the employer is estopped from stating rights in the summary and not honoring that statement. *See also Flacche v. Sun Life Assurance Co. of Canada (U.S.),* 958 F.2d 730, 735–36 (6th Cir.1992) (when employees rely on a summary, "it is natural for courts to hold the SPD controlling when it conflicts with the plan itself").

If one appreciates the equitable principles underlying these and other cases, it is easy to see that those principles do not support the general conclusion that the summary will always trump the plan. The Seventh Circuit, for instance, described *Edwards* and similar holdings from other circuits as "cases in which employees relied to their detriment on the terms in a summary plan description that were more favorable to them than the actual provisions of the benefit plan." *Andersen v. Chrysler Corp.,* 99 F.3d 846, 858 & n. 10 (7th Cir.1996). Limiting the principle to those particular circumstances, *Andersen* held that where the plan itself gives the employee greater benefits and protection, it, rather than the summary, will control. *See id.* at 857–58; *cf.* 29 U.S.C. § 1024(b)(1) (1994) (contemplating that the summary plan description will reflect changes in the actual plan, not *vice versa* ). In the instant case, the Second SPD's establishment of discretionary authority would give employees less protection in the review of benefit denials. The Seventh Circuit's rationale would prevent reliance on the Second SPD in order to take away a significant protection of the beneficiary.

The Sixth Circuit has not directly addressed this precise circumstance, *i.e.,* where the Defendant company issued a new plan summary whose provisions work to the detriment of beneficiary employees. Defendants argue that *Foltice v. Guardsman Products, Inc.,* 98 F.3d 933 (6th Cir. 1996), refutes a conclusion that summary plan descriptions should prevail over actual ERISA plans only when the employee might detrimentally rely on the former. The Court recognizes language in *Foltice* stating that, when there is conflict, summary plan descriptions always control over the plan itself. *See id.* at 938. However, to the extent one were to view the *Foltice* court's bare words as an inflexible rule, it conflicts with the policy basis of *Edwards, i.e.,* the inequity of inducing employee reliance on the plan summary when it was the company's only communication of a plan's provisions.[3] To consider *Foltice* too narrowly and out of context with other cases and ERISA's underlying policy is likely a mistake. For example, about nine months before *Foltice,* a separate Sixth Circuit panel considered the issue more directly. That panel's holding belies the idea that summaries will invariably prevail over the plan. In *Lake v. Metropolitan Life Insurance Company,* the appellate court stated that "[l]anguage in a plan summary *may, under certain circumstances,* control inconsistent terms in the plan." 73 F.3d 1372, 1379 (6th Cir.1996) (emphasis added). The *Lake* panel did not elaborate on the nature of those "certain circumstances." This Memorandum Opinion cannot resolve the precise linguistic inconsistencies of *Edwards, Foltice,* and *Lake.*

■ In the instant case, plan participants possessed an unamended copy of the Plan, and that Plan was the actual contract between the Plaintiffs and their employer. Ignoring the formalities of amending the

---

3. The underlying equities easily distinguish our case from *Foltice.* In *Foltice,* the summary and the plan were issued at the same time, and the employee had never received a copy of the plan. Here, the Second SPD is a recently amended version of the original summary, and the employees had copies of the original Plan. The Second SPD purported to describe the original Plan without changes. It cites to the February 21, 1996, Plan as its original source.

Plan, Defendants issued a new summary that would confer discretionary authority, a potentially significant detriment to employees' procedural rights under the Plan. To allow Defendants to change their own discretion to review benefit denials without amending the actual Plan runs counter to the goals of ERISA. As *Edwards* explicitly recognizes, the ERISA scheme intended to ensure fairness in the administration of benefit plans, and to protect employees' legitimate contractual expectations. *See Edwards,* at 851 F.2d at 136; *Andersen,* 99 F.3d at 858 & n. 10. It was not intended to create a quicker and easier way to dispense with procedural protections. In this case, Plaintiffs had every reason to expect that the actual Plan would govern important Plan provisions. There is no possibility of detrimental employee reliance on the Second SPD (indeed, quite the opposite), so fairness and equity cannot demand that the summary replace the existing contract. Were the Second SPD to prevail as to the issue of discretionary authority, ERISA's policies would not be served, and the Act would fail to protect the employees' procedural rights under the Plan. Therefore, the Court finds that the original Plan language governs the standard of review.

## IV.

Even if Defendants could alter the lack of discretion without following the contractual formalities of amending the actual, original Plan, the Second SPD was not an effective amendment under its own terms and those of the original Plan. Defendants do not dispute that the Aegon merger was in the works when the Second SPD issued, and Providian probably did not publish the Second SPD until the merger was formally announced to the employees and the media. *See supra* note 1. The Court therefore finds that Providian attempted to amend the plan in connection with or in anticipation of a Change in Control, if not in fact subsequent to a Change in Control.

Defendants seem not to contest the proximity of the Second SPD's publication and the Providian—Aegon merger. Instead, they argue that the Plan's amendment clause applies only to the Plan, and not to the summary plan description. This makes very little sense. If Defendants want the Second SPD to supersede the actual Plan as to the presence of discretionary authority, they are asking the Court to enforce an amendment of an important restriction on Defendants' power to interpret the Plan. If Defendants want their new summary plan description to control as a substantive provision of the Plan and to detrimentally affect the procedural rights of employee plan participants, it must only be altered in conformity with the strictures of the Plan's amendment process. The attempted amendment violated this process, and therefore was ineffective.

The Court will enter an order consistent with this Memorandum Opinion.

## ORDER

The Change in Control Plan does not grant discretionary authority to Defendants' plan administrator. Being otherwise sufficiently advised,

IT IS HEREBY ORDERED that the Court will apply a *de novo* standard to review the plan administrator's denials of benefits to Plaintiffs.

The Court will set a conference to discuss a further litigation schedule.