*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206
File Name: 07a0235p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

W. ASHTON HAUS,

        *Plaintiff-Appellee,*

     *v.*

BECHTEL JACOBS CO., LLC,

        *Defendant-Appellant.*

No. 04-6192

---

Appeal from the United States District Court
for the Western District of Kentucky at Paducah.
No. 03-00056—Thomas B. Russell, District Judge.

Argued: October 31, 2006

Decided and Filed: June 21, 2007

Before: MERRITT and BATCHELDER, Circuit Judges; GWIN, District Judge.[*]

---

## COUNSEL

**ARGUED:** James P. Baker, JONES DAY, San Francisco, California, for Appellant. Kerry D. Smith, McMURRY & LIVINGSTON, Paducah, Kentucky, for Appellee. **ON BRIEF:** James P. Baker, Craig E. Stewart, Virginia H. Perkins, JONES DAY, San Francisco, California, for Appellant. Kerry D. Smith, McMURRY & LIVINGSTON, Paducah, Kentucky, for Appellee.

     GWIN, D. J., delivered the opinion of the court, in which MERRITT, J., joined. BATCHELDER, J. (pp. 9-16), delivered a separate dissenting opinion.

---

## OPINION

---

     GWIN, District Judge. In this ERISA action, Plaintiff-Appellee W. Ashton Haus ("Haus") sued the Defendant-Appellant, Bechtel Jacobs Company, LLC. ("Bechtel Jacobs"), seeking to enforce and clarify his rights under four employee benefit plans: (1) the Health and Welfare Plan for Employees of Bechtel Jacobs Company, LLC and Subcontractors ("Plan I"), (2) the Bechtel Jacobs Company, LLC Pension Plan for Grandfathered Employees ("Plan II"), (3) the Bechtel Jacobs Company, LLC Severance Plan for Grandfathered Employees ("Plan III"), and (4) the

---

[*] The Honorable James S. Gwin, United States District Judge for the Northern District of Ohio, sitting by designation.

Management and Integration 401K Plan ("Plan IV").[1]  In his suit, the Plaintiff-Appellee alleged that the court should "clarify his rights to future benefits" under the four plans by deeming him eligible to receive certain pension plan benefits only made available to a limited group of employees classified by Bechtel Jacobs as "Grandfathered Employees."

The district court ultimately found in favor of the Plaintiff-Appellee, holding that Haus is entitled to "Grandfathered Employee" status.  The court reached this conclusion, however, only after first finding that the Bechtel Jacobs' plan administrator acted reasonably in interpreting the plans' eligibility requirements so as to deny the Plaintiff-Appellee the status of a  "Grandfathered Employee."   Specifically, the district court held that the Defendant-Appellant was eligible notwithstanding the plan administrators' reasonable determination to the contrary because the Plaintiff-Appellee relied on conflicting summary plan descriptions ("SPD").

With this appeal, Defendant-Appellant Bechtel Jacobs seeks reversal of this decision, arguing that (1) no conflict exists between the summary plan descriptions and the plans, and (2) the Plaintiff-Appellee is not entitled to benefits based purely upon a violation of the summary plan description disclosure requirements contained in ERISA § 1022.  For the reasons that follow, we **AFFIRM** in part and **REVERSE** in part the decision of the district court.

## I. Background

Prior to the Spring of 1998, the Plaintiff-Appellee worked for Lockheed Martin Energy Systems ("Lockheed"), which held an operating contract with the United States Department of Energy to perform environmental management and enrichment facilities work at the Paducah Gaseous Diffusion Plant.  Upon the Department of Energy switching the operational structure of the diffusion plant, Bechtel Jacobs took over as the primary contractor for the plant on April 1, 1998.  As part of this operational transition, the DOE contract required Bechtel Jacobs to develop a transition plan which, among other things, would provide transitioned employees with the opportunity to participate in a pension plan and a health and welfare plan.

Mr. Haus left his job with Lockheed on March 31, 1998 and began work with Entech Corporation, a first-tier subcontractor to Bechtel Jacobs, on April 2, 1998.  Mr. Haus continued to work at Entech through July 16, 1999, at which point he transitioned to another first-tier Bechtel Jacobs subcontractor, Camp Dresser & McKee Federal Programs. On July 17, 2000 Mr. Haus began direct employment with Bechtel Jacobs.

Beginning with a December 13, 2000 letter sent to Bechtel Jacobs' Human Resources Department, Haus repeatedly but unsuccessfully sought to confirm his status as a Grandfathered Employee eligible for the transition-related benefit plans created by the Defendant-Appellant.  On March 11, 2003, the Plaintiff-Appellee then initiated the instant action, arguing that he is a

---

[1] The Plaintiff-Appellee filed suit under ERISA § 502(a)(1)(B), which states in relevant part:
(a) Persons empowered to bring a civil action
   A civil action may be brought--
      (1) by a participant or beneficiary
            (A) for the relief provided for in subsection (c) of this section, or
            (B) to recover benefits due to him under the terms of the plan to enforce his rights under
            the terms of this plan, *or to clarify his rights to future benefits under the terms of this plan*;
      (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under
      section 1009 of this title;
      (3) by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any
      provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable
      relief (I) to address such violations or (ii) to enforce any provisions of this subchapter or the terms
      of the plan.  (Emphasis added.)

"Grandfathered Employee" and therefore is eligible for the benefit plans. Each of the four plans describe their qualification requirements for grandfathered status somewhat differently, but both parties agree that "[e]ach plan shares a common first requirement . . . which includes employment by LMES [Lockheed] on March 31,1998" and that the Plaintiff-Appellee satisfies that requirement. The parties' dispute therefore revolves around the plans' second requirement.[2]  All four plans require an individual to have worked for Bechtel Jacobs or one of its first- or second-tier subcontractors between 1998, and April 1, 2000.  Additionally, Plan I contains language that suggests that eligibility requires employment with a first- or second-tier subcontractor engaged in specific "workforce transition" areas.

In its brief to the district court, the Plaintiff-Appellee argued  that (1) the Defendant-Appellant's decision to deny him grandfathered status was arbitrary and capricious and (2) that the Defendant-Appellant's plan did not sufficiently apprise Mr. Haus of his rights under the relevant benefit plans.  In response, Defendant-Appellant Bechtel Jacobs disputed the Plaintiff-Appellee's claims, saying that (1) the plan administrator's eligibility determination was not arbitrary and capricious and (2) both the plans and their corresponding summaries  amply apprised Mr. Haus of his rights.  Finding in favor of the Plaintiff-Appellee, the district court held that although Bechtel Jacobs' plan administrator acted reasonably in interpreting the plans' eligibility requirements, Mr. Haus was nonetheless entitled to benefits because the Plaintiff-Appellee relied on conflicting summary plan descriptions.

---

[2] Each plan shares a common first requirement for grandfathered status, which includes employment by LMES on March 31, 1998; neither party disputes that Mr. Haus satisfied that provision.  The Plans describe the second eligibility qualification requirement as follows:

1. *Health and Welfare Plan for Employees of Bechtel Jacobs Company LLC and Subcontractors* (Plan I) defines a grandfathered employee as an employee . . . [who] either [was] subsequently employed by Bechtel Jacobs Company LLC or by a Subcontractor prior to April 1, 2000 for work in a regular, full-time *staffing plan position*.  It then defines "Staffing Plan Position" as a regular, full-time position *identified on an Eligible Subcontractor's Staffing Plan, Exhibit 'H', 'C' Form B Appendix 1*, submitted pursuant to the requirements of the DOE Contract and as approved by Bechtel Jacobs Company LLC. The term shall not include a short term or intermittent position. (A.R. 1 at pg 8-9, 3 2.22.) Finally, Plan I defines "Eligible Subcontractor" as a Subcontractor who employs at least one Grandfathered Employee at the time the Subcontractor commences work under the DOE contract. (A.R. 1 at pg 5, 5 2.12.) Thus, according to Plan I, Mr. Haus's status depends on whether his work with Entech and Camp Dressler was identified on their "Staffing Plan, Exhibit 'H', 'C.'"
[J.A. 57-62.]

2. *Bechtel Jacobs Company LLC Pension Plan for Grandfathered Employees* (Plan II) offers a different definition of the second requirement for grandfathered status. According to Plan II: a Grandfathered Employee is an individual who is employed, after March 31, 1998 and before April 1,2000, *by a Company under U.S. Department of Energy Contract* DE-A05-980R22700.  Plan II defines "Company" as Bechtel Jacobs Company LLC *and any first-tier or second-tier subcontractor, within the meaning of U.S. Department of Energy Contract DE-ACO5-980R22700* that is authorized by Bechtel Jacobs Company LLC or its delegate or the Committee to participate in the Plan, and that elects to participate in the Plan on behalf of its eligible Employees . . . .
[J.A. 64-65.]

3. *Bechtel Jacobs Company LLC Severance Plan for Grandfathered Employees*  (Plan III) provides another version of the second requirement for grandfathered status, i.e., as *an employee who was subsequently employed by the Contractor or its first-tier or second-tier Subcontractors for work under the Contract prior to April 1, 2000* (A.R. 4 at pg 2.) Plan I11 defines *"Contract" as simply the DOE Contract*, (id.), and offers no other relevant definitions.
[J.A. 70-71.]

4. *Management and Integration 401 K Plan* (Plan IV) The record does not contain the actual plan language for Plan IV. The SPD for Plan IV, however, indicates that eligibility as a grandfathered employee requires that "[t]he individual was either subsequently *employed by Bechtel Jacobs Company LLC or its first-tier or second-tier Subcontractors for work under this Contract* prior to April 1, 2000 . . . ."
[J.A. 76.]

## II. Legal Standard

Under *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989), "[A] denial of benefits challenged under § 1132(a)(1)(B) is to be reviewed under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." Here, the district court found Bechtel Jacobs Plans gave its administrators such fiduciary discretion. We "review a district court's determination regarding the proper standard to apply in its review of a plan administrator's decision de novo." *Hoover v. Provident Life & Accident Ins. Co.*, 290 F.3d 801, 807 (6th Cir. 2002). Neither party suggests the Plans do not give discretion to the Plans Administrators.

When plans give discretion, we apply the highly deferential arbitrary and capricious standard. *Borda v. Hardy, Lewis, Pollard, & Page, P.C.*, 138 F.3d 1062, 1066 (6th Cir. 1998) (citation and quotation marks omitted). A plan administrator's decision will not be deemed arbitrary and capricious so long as "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989) (noting that "[t]he arbitrary and capricious standard is the least demanding form of judicial review").

## III. Analysis

With this appeal, Defendant-Appellant Bechtel Jacobs argues that the district court erred in finding that the Plaintiff-Appellee is entitled to benefits under the relevant benefit plans notwithstanding the fact that Bechtel Jacobs' contrary interpretation of plan eligibility requirements was reasonable. Specifically, the Defendant-Appellant argues that the district court erred in holding that the Plaintiff-Appellee was entitled to benefits based upon conflicting language in the summary plan descriptions, arguing that (1) no conflict exists between the summary plan descriptions and the plans, and (2) the Plaintiff-Appellee is not entitled to benefits based purely upon a violation of the summary plan description disclosure requirements contained in ERISA § 1022. We address the basis for the district court's decision and the Defendant-Appellant's arguments below.

### A. Validity of Defendant-Appellant's Interpretation of Plan Eligibility Requirements

As an initial matter, we consider whether the district court erred in grudgingly determining that the Defendant-Appellant's interpretation of the four plans' eligibility criteria was reasonable under the applicable arbitrary and capricious standard of review. Plaintiff-Appellee Haus claimed entitlement to retirement benefits under four Bechtel Jacobs plans. The dispute here revolves around the eligibility requirements under the plans, which are only available to "grandfathered employees." Each plan describes the qualification requirements for grandfathered status differently, but neither party disputes that "[e]ach plan shares a common first requirement . . . which includes employment by LMES [Lockheed] on March 31, 1998" nor that the Plaintiff-Appellee satisfies this requirement. Accordingly, the issue before the Court here revolves around the second requirement for grandfathered status.

With respect to this second eligibility prong, the language contained in each plan differs somewhat, although the requirements in Plans II-IV are extremely similar. Textually the plans all require an individual to have worked for Bechtel Jacobs or one of its first- or second-tier subcontractors between 1998, and April 1, 2000. Additionally, Plan I contains language that suggests that eligibility requires employment with a first- or second-tier subcontractor engaged in specific "workforce transition" areas. Neither Plan II, Plan III, nor Plan IV contain comparable language. Nonetheless, the Defendant-Appellant has interpreted each plan to include this more restrictive second eligibility prong.

In evaluating the Defendant-Appellant's creative interpretation of Plans II-IV's eligibility criteria, the district court clearly articulated its belief that such an interpretation strained the plain

meaning of such plans' text.  Nonetheless, the district court ultimately found that the Defendant-Appellant's interpretation was reasonable since extrinsic evidence in the record indicated that "the narrower definition found in Plan I was the one Bechtel and the Department of Energy meant to employ when dealing with the various subcontractors."  Although the Court agrees that an ERISA administrator's interpretations are entitled to substantial deference, we find that the Defendant-Appellant's  interpretation of the eligibility requirements in Plans II-IV are unreasonable.

Even in Plan I, the requirement that grandfathered status requires employment with a first- or second-tier subcontractor in specific "workforce transition areas" is less than clear.  Plan I's text does specify, however, that an employee must be employed "for work in a regular full-time staffing plan position," which in turn is defined as " . . . a regular, full-time position identified on an Eligible Subcontractor's Staffing Plan, Exhibit 'H', 'C' Form B Appendix 1 . . . "

Plans II-IV contain no similar language, requiring at most that an employee be employed for work under the DOE contract and Appellant nowhere disputes that Haus worked under the DOE contract.[3]  Specifically, Plan II states that "a Grandfathered Employee is an individual who is employed, after March 31, 1998 and before April 1, 2000, by a Company under U.S. Department of Energy Contract DE-A05-980R22700."  Plan III also requires employment with a first- or second-tier subcontractor for "work under the Contract prior to April 1, 2000," and defines  "Contract" as simply the DOE Contract with no other relevant definitions.  Similarly, Plan IV only requires employment during the relevant time period by either "Bechtel Jacobs Company LLC or its first-tier or second-tier Subcontractors for work under this Contract."

In arguing that Plan I's eligibility criteria applies to all four plans, the Defendant-Appellant says that the eligibility requirements contained in Plans II-IV are somewhat ambiguous and that its administrator's interpretation resolving that ambiguity is entitled to substantial deference.  *See Wulf*

---

[3] The dissent disagrees with our characterization of the record,  stating that  "Bechtel's position all along has been that Mr. Haus' employment with Entech and CDM did not fall 'under the contract.'"   But, of course, we instead face the issue of whether the plan documents *for each separate plan* support Bechtel's position. While Bechtel claims the phrase "under the contract" includes Plan I's more stringent eligibility criteria, those eligibility requirements are nowhere found in Plans II, III, or IV.  More important, Bechtel never explains what other contract Haus's employers operated under if they did not operate under Bechtel Jacob's umbrella contract with the Department of Energy.  Bechtel has never denied that Haus performed work at the Paducah, Kentucky site covered by the Jacob's umbrella contract. Indeed, at oral argument the Appellant admitted their was only one contract:

| | |
|---|---|
| Court: | Wasn't he [Haus] working at the same facility that the Department of Energy had contracted with your Client to run? |
| Appellant: | He was working in Paducah, Kentucky that's correct your honor. |
| Court: | Wasn't it overall under the Department of Energy? |
| Appellant: | Yes. |
| Court: | Wouldn't he then be working as a subcontractor or for a subcontractor under the overall department of energy contract? |
| Appellant: | Well, I think that's true, but . . . |

[Recorded Transcript of Oral Argument at 6:18.]

During the rebuttal portion of oral argument, which the dissent quotes at length, the Appellant backed away from this omission with contradictory statements,  saying both that (1) the record was silent regarding whether Bechtel's subcontractor did work at the Paducah, Kentucky site not controlled by the contract with the DOE; and (2) Bechtel's subcontractors do engage in non-DOE work at that site.  At no point, however, did Counsel for the Appellant argue that Mr. Haus performed work not covered by the blanket DOE contract, which is ultimately the only relevant inquiry.

*v. Quantum Chemical Corp.*, 26 F.3d 1368, 1376 (6th Cir. 1994) ("The Language is ambiguous if it is subject to two reasonable interpretations."). We agree that ERISA administrators are entitled to substantial deference, but find that no ambiguity exists regarding the eligibility requirements conveyed by the text in Plans II-IV. No language in any plan other than Plan I mentions specific "workforce transition areas." Indeed, no language in Plans II-IV even hints at such a requirement. Accordingly, we find that the Defendant-Appellant's application of Plan I's stringent eligibility requirements to each plan – absent any text that even remotely supports such a conclusion -- is arbitrary and capricious.

The dissent disagrees with this determination and says that the Court's review of the Defendant-Appellant's eligibility determination in this case is more searching than is allowable under the applicable standard of review. Given that the documents for each separate plan completely fail to support Bechtel's contention that Haus' employment with Entech and CDC did not fall under the DOE contract, we can only assume that the dissent would object to any review failing to rubber-stamp the Plan Administrator's eligibility determination. We would respectfully suggest that some meaningful review is not only allowable, but required.

The dissent particularly objects to our observation, based in part upon statements made at oral argument, that the Defendant-Appellant concedes that Mr. Haus performed work under the blanket DOE contract, identified in the plan materials as DE-A05-980R22700. Specifically, the dissent points to an exchange during rebuttal argument to support the proposition that Mr. Haus may have performed work at the Paducah, Kentucky site not covered by the blanket DOE contract. At best, however, the exchange cited by the dissent makes clear that there is no evidence in the record to refute the Plaintiff-Appellee's assertion that the blanket DOE contract covered the work he performed. It is *possible* that work not covered by the blanket DOE contract took place at the Paducah, Kentucky site, but if it did the record is silent on that point.

Moreover, this issue is largely beside the point as the crux of Bechtel's argument has never been that Mr. Haus was working under either some mysterious non-DOE contract or a distinct but unidentified DOE contract. Rather, the Defendant-Appellant argues – without any support in the record – that eligibility under all four plans requires a showing that an individual performed a specific type of work under the blanket DOE contract. The dissent considers this textually-strained interpretation valid. We disagree and therefore find the Defendant-Appellant's interpretation of Plans II-IVs' eligibility requirements arbitrary and capricious.

## B. Conflict Between Summary Plan Descriptions and Plans

In challenging the district court's judgment, Defendant-Appellant Bechtel Jacobs argues that no conflict exists between the relevant benefit plans and their corresponding summary plan descriptions. Because the Defendant-Appellant's interpretation of Plans II-IV was arbitrary and capricious, we need not discuss whether a conflict did in fact exist between those plans and their respective summary plan descriptions. The accuracy of the Defendant-Appellant's argument is nonetheless significant with respect to Plan I because this Court has previously held that where statements made in summary plan descriptions conflict with statements made in the plans themselves, the summary plan descriptions are controlling. *Edwards v. State Farm Mutual Automobile Insurance, Co.*, 851 F.2d 134, 136 (6th Cir. 1988); *see also Helwig v. Kelsey-Hayes Co.*, 93 F.3d 243 (6th Cir. 1996). In *Edwards*, the Defendant sought to deny an employee disability benefits through a relatively straightforward application of the eligibility criteria contained in the actual plan. Because that criteria directly conflicted with the eligibility information contained in the summary plan description, however, we held that the Defendant could not deny the Plaintiff disability benefits because "statements in a summary plan are binding and if such statements conflict with those in the plan itself, the summary shall govern." 851 F.2d at 136.

The principle underlying our decision in *Edwards,* and the summary plan disclosure obligations contained in ERISA § 1022, is ultimately one of pragmatic fairness. When an employer distributes a document that purports to summarize an employee's benefit information, a lay beneficiary should logically be able to rely on that summary rather than combing through the often nearly incomprehensible plan itself. Accordingly, a summary plan must be "written in a manner calculated to be understood by the average plan participant, and . . . sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a)(1). Where an employer fails to satisfy the disclosure obligations contained in section 1022, such that the information contained in a summary plan description is in conflict with that of the plan itself, it is logical that the courts enforce the terms of the summary plan. Moreover, such a rule comports with the legislative intent underlying ERISA, which makes clear that, "[i]t is grossly unfair to hold an employee accountable for acts which disqualify him from benefits, if he had no knowledge of these acts, or if these conditions were stated in a misleading or incomprehensible manner in the plan booklets." H.R.Rep. NO. 93-533, 93rd Cong., 2d Sess., *reprinted in* 1974 U.S.Code Cong. & Admin. News 4639, 4646.

With this appeal, Defendant-Appellant Bechtel Jacobs contends that *Edwards* is inapplicable here because no conflict exists between the relevant benefit plans and their corresponding summary plan descriptions. Specifically, Bechtel Jacobs argues that although textual conflicts do exist between the four plans, no conflict exists between any individual plan and its corresponding summary plan description. The Court need not address the efficacy of the Defendant-Appellant's argument with respect to Plans II-IV, given that the administrator's interpretation of those plans was arbitrary and capricious in this case, but we nonetheless note that on its face such an argument appears misplaced. Where one interprets Plans II-IV to include Plan I's more stringent eligibility requirements - as is necessary for the Defendant-Appellant to exclude the Plaintiff-Appellee from participation in the plans - a clear conflict exists between each plan as interpreted and its summary plan description. Moreover, such a conflict implicates the same concerns as those addressed by this Court in *Edwards*.

ERISA § 1022 explicitly requires that employers craft summary plan descriptions so as to "reasonably apprise . . . participants and beneficiaries of their rights and obligations under the plan." 29 U.S.C. § 1022(a)(1). Moreover, although "a summary need not 'include every detail of the thing it summarizes,' the underlying Plan should include all important items in the summary." *Coleman v. Aegon Insurance Group*, 71 F.Supp.2d 714, 717 (W.D. Kentucky 1999) (quoting *Sprague v. General Motors Corp.*, 133 F.3d 388 (6th Cir. 1998) (en banc)); *see also Layou v. Xerox Corp.*, 238 F.3d 205, 211 (2nd Cir. 2001) ("employees are entitled to rely on the SPDs as their primary source of information about their benefits."). Here, the summaries for Plans II-IV seemingly fail to meet these requirements given the sharp conflict between their language and the Defendant-Appellant's interpretation of the Plans. As we noted in *Edwards*, where a conflict exists between the information contained in a summary plan description and the plan itself, the resulting ambiguity severely disadvantages plan participants. Indeed, in *Edwards* we noted that the Defendant "should have realized that the explicit language of the summary could or would have caused [the Plaintiff] and similarly situated unsophisticated lay employees to rely upon [the employer's] inadvertant [sic] misrepresentation to their detriment." *Edwards*, 851 F.2d at 136.

Although the instant case differs somewhat from *Edwards* in that the language contained in Plans II-IV and their respective summaries are similar, the conflict between the Plans *as interpreted* and their corresponding summaries presents the same dangers described above. Just as in *Edwards*, the Defendant-Appellant should have realized that lay beneficiaries such as Mr. Haus would rely on the language contained in the plan summaries distributed by Bechtel Jacobs. Moreover, as in *Edwards* Mr. Haus did indeed rely on the summary plan descriptions to his determent both in agreeing to terminate his employment with Lockheed on March 31, 1998, and in failing to investigate whether his employment with a Bechtel Jacobs' subcontractor would qualify him for

benefits under the respective plans. As such, even if the administrator's interpretation with respect to Plans II-IV had not been arbitrary and capricious, the Plaintiff-Appellee likely would have prevailed based upon the conflict between those plans as interpreted and their respective summary plan descriptions.

With respect to Plan I, we find no indication that the SPD for Plan I was included in the appendix in this appeal or was included in the record before the district court. Because this precludes us from determining whether a conflict existed between Plan I's eligibility requirements and its summary descriptions, the Court vacates and remands to the district court for review of Plan I's SPD to determine whether it conflicts with that Plan.

## C.    ERISA § 1022

Finally, the Defendant-Appellant argues that this Court should reverse the district court's holding that a violation of ERISA § 1022's disclosure obligations can serve, in and of itself, as the basis for awarding an employee plan benefits. We reject this argument first because the district court simply never articulated such a rule. To the contrary, the district court explicitly relied on *Edwards* as the basis for its decision, although it did note that the ambiguity between the respective Plans made the injury to the Plaintiff-Appellee even "more grievous." The ambiguity between the four plans' respective definitions of the term grandfathered employee undoubtedly did create confusion for the Plaintiff-Appellee and other lay beneficiaries, but did not serve as the basis for the district court's decision. Additionally, this argument is also without force as to Plans II-IV in light of this Court's holding that the plan administrator's interpretation of those plans was arbitrary and capricious. As such, we again reject the Defendant-Appellant's argument.

IV.  Conclusion

For the foregoing reasons, this Court **AFFIRMS** in part and **REVERSES** in part the decision of the district court.

———————————

**DISSENT**

———————————

ALICE M. BATCHELDER, Circuit Judge, dissenting. I write separately because I view the record differently than the majority does, and with due adherence to the law, I conclude that the district court was in error and that error warrants reversal. Accordingly, I must respectfully dissent.

**I**.

Until March 31, 1998, W. Ashton Haus worked for Lockheed Martin Energy Systems (LMES), which operated the Paducah (Kentucky) Gaseous Diffusion Plant under a contract with the Department of Energy (DOE). On April 1, 1998, the LMES-DOE contract expired and Bechtel Jacobs Company LLC replaced LMES as the primary contractor under Environmental Management Contract No. DE-AC05-98OR22700 (U.S. DOE 12/18/97), i.e., "the contract." According to the excerpts in the record, this contract describes the specific environmental services that Bechtel would provide to DOE at several of its facilities, including the Paducah Gaseous Diffusion Plant.

On April 2, 1998, Mr. Haus began work with a first-tier subcontractor to Bechtel, and therefore, was not transferred to Bechtel's payroll, as his coworkers had been. Mr. Haus worked for one first-tier contractor (Entech Corp.) and then another (Camp Dresser & McKee) before gaining direct employment with Bechtel on July 17, 2000. Bechtel has asserted, repeatedly and from the very outset of this dispute with Mr. Haus, that Entech did not perform any former-LMES work (i.e., particular environmental projects) under this DOE contract and, although CDM did assume and perform certain former-LMES projects, Mr. Haus did not actually work on those projects himself.

When Bechtel took over from LMES, the Bechtel-DOE contract required Bechtel to develop and implement a "transition plan" by which LMES's incumbent workforce would be transferred to Bechtel or its first-tier subcontractors, effective April 1, 1998. These employees were entitled to continuation of accumulated benefits (i.e., "grandfathering") under certain pension, healthcare, severance, or 401k plans. This "grandfathered status" meant that when these transitioned employees began employment with their new employers (i.e., Bechtel or its first-tier subcontractors, such as Entech and CDM): (1) these transitioned employees would participate in the transition plans, rather than a plan or plans offered by the new employer; (2) their accumulated service time with LMES would be credited toward those transition plans; and (3) they would continue to accumulate benefits under the transition plans as if there had been no discontinuation of employment with LMES (i.e., they would not start accumulating benefits at zero or be forced into a new plan).

By his own admission, Mr. Haus voluntarily resigned from LMES on March 31, 1998, to take a preferred position with Entech, and he was, therefore, not part of the transition program. During his two years at Entech and CDM (April 1, 1998 to July 17, 2000), Mr. Haus did not work on former-LMES projects and was not part of the transition program, and therefore, he never sought to participate in the transition plans, to accumulate time towards those plans, or to be classified as an LMES grandfathered employee. Mr. Haus stated in an email to Bechtel:

> I was eligible for transition on 4/1/98. I then worked for a BJC 1st tier subcontractor, and now for BJC. I do not understand why I can not receive credit for time spent with LMES prior to 4/1/98 and the subsequent time now spent employed by BJC. *I am not asking for time credit earned while working with 1st tier subcontractors*, I am only asking for the 4 ½ years employed with LMES and now the 6 months (and counting) spent with BJC.

(emphasis added).  This undermines the supposition that Mr. Haus was working under the contract while employed by Entech and CDM, or that Bechtel could not prove that Mr. Haus was not working under the contract, or that, as an unsophisticated lay employee, he might have mistakenly assumed that he was working under the contract.  Mr. Haus was neither unsophisticated, nor confused, nor misled into thinking he was working under the contract.  While others have suggested otherwise, Mr. Haus knew all along that his employment with Entech and CDM did not count as work under the contract.  Moreover, Bechtel has insisted consistently and continuously since the very beginning of the dispute that Mr. Haus' employment with Entech and CDM did not fall under the contract.

On July 17, 2000, Mr. Haus began direct employment with Bechtel, and later (circa December 13, 2000), he sought for the first time to be classified as a grandfathered employee under the "employee benefit plans" arising from the LMES-to-Bechtel transition.  There are four separate plans, and as a practical matter, Mr. Haus was actually seeking grandfathered status as to only one plan, the pension plan.  As evidenced by the correspondence in the record, Mr. Haus really just wanted his time with LMES (i.e., pre-Entech or CDM) to be aggregated with his then-accumulating time at Bechtel, and all of it applied toward his total pension benefits under a pension plan.  Bechtel disagreed with his claim to grandfathered status and explained to him that the DOE contract also prevented his attaining such status.

In an effort to overrule this decision by Bechtel's plan administrator, Mr. Haus sued Bechtel in federal district court, pursuant to ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).  In his complaint, he urged the court to declare him a "grandfathered employee" in some unspecified "defined benefit plan," based on the definition of "grandfathered employee" contained in Bechtel's employee handbook, which he quoted in his complaint and appended thereto.  Mr. Haus basically claimed that: (1) Bechtel's decision to deny him grandfathered status was arbitrary and capricious, and (2) Bechtel's plan(s) did not sufficiently apprise him of his rights.

Ultimately, the district court denied the former, but agreed with the latter.  In reaching its decision, the district court acknowledged that each plan expressly granted the Bechtel plan administrator the discretion to determine eligibility and construe the plan's terms, which meant that the court was bound to a very limited standard of review:  whether the plan administrator's decision was arbitrary or capricious.  Based on that review, the district court concluded that the administrator's decision was not arbitrary or capricious.  However, rather than "respect such decisions" as it had promised, the district court continued on and ruled that Mr. Haus was in fact entitled to be instated into all four (4) plans as a "grandfathered employee" on the theory that Bechtel had violated a certain ERISA reporting provision.  The district court concluded:

> [I]t is abundantly clear that Bechtel has violated ERISA's requirement that plan descriptions be 'sufficiently accurate and comprehensive to reasonably apprise participants and beneficiaries of their rights and obligations.'   29 U.S.C. § 1022(a)(1).  In this case the harm to Mr. Haus is all the more grevious [sic] because the conflict is not just between the summary plan and the plan itself, but among various plans offered by Bechtel . . . .  Bechtel has consciously or unconsciously issued conflicting plan descriptions and definitions of 'Grandfathered Employees.'  Mr. Haus fits some of those definitions, but not all.  In such circumstances, Bechtel cannot rely on the ambiguity it created in order to deny him a benefit to which he is, under most of the plans they issued, clearly entitled.

Although Mr. Haus prevailed in the district court, his theory on appeal is different from the district court's theory, and the majority's theory in affirming the decision is different from both.  I believe all three are in error, and while I would affirm the district court's finding that the administrator's

decision was not arbitrary or capricious, I would vacate the rest as beyond the court's prescribed role.

## II.

If an ERISA plan grants the plan administrator the discretion to determine eligibility and construe the plan's terms, then the reviewing court is limited to reviewing that administrator's decision to ensure that it was neither arbitrary nor capricious. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). A plan administrator's decision will not be deemed arbitrary or capricious so long as "it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome." *Davis v. Ky. Fin. Cos. Ret. Plan*, 887 F.2d 689, 693 (6th Cir. 1989)). Under the established law, we may not simply interject our own view or preference in place of the plan administrator's. *See Henry Ford Health Sys. v. Shalala*, 233 F.3d 907, 911 (6th Cir. 2000) (*citing Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983)).

Each of the Bechtel plans granted the plan administrator the discretion to determine eligibility and construe the plan's terms. Furthermore, the district court found that the administrator's decision was not arbitrary or capricious. Having made this decision, the district court was not at liberty to engage in further review so as to obtain a different outcome. This alone is a sufficient basis to reverse, and for this same reason I must disagree with the majority's analysis.

The majority renewed the inquiry into the plan administrator's decision (despite the absence of any claim of error in this regard on appeal), found the district court's factual determination to be incorrect, and concluded that the administrator's decision was arbitrary and capricious. In its analysis, however, the majority plainly identified the administrator's "reasoned explanation," which was that the plan administrator had applied a narrow interpretation of the transition plan, as intended by Bechtel and the DOE, and even noted that this explanation was supported by the record. I would hold that such a "reasoned explanation" is all that is necessary to overcome a claim that a decision is arbitrary or capricious. *See Davis*, 887 F.2d at 693. I would also decline to proceed any further and refuse to interject my own preferences into this case. *See Henry Ford*, 233 F.3d at 911.

The majority, however, unabashedly interjects its own views, deeming the administrator's interpretation "unreasonable" and imposing its own preferred interpretation. Central to the majority's interpretation is its conclusory -- and incorrect -- statement that Bechtel "nowhere disputes that Haus worked under the contract." On the contrary, Bechtel's position all along has been that Mr. Haus' employment with Entech and CDM did not fall "under the contract." Bechtel explains:

> Given the language of the underlying DOE contract, it was reasonable for Bechtel Jacobs to interpret 'work under the Contract' as meaning transition scope of work - i.e., work formerly self-performed by LMES transitioned to Bechtel Jacobs and then (in most instances) to its subcontractors. That is the work that was shifting from one employer to another as a result of the DOE Contract transition and it was the incumbent workers performing that work who were the subject of the workforce transition provisions in the Contract.

> In assessing the reasonableness of Bechtel Jacobs interpretation, it is significant that the DOE agreed with that interpretation. As noted above, when Mr. Haus appealed to the DOE, the DOE responded that Mr. Haus did not satisfy the requirements for grandfathered employee status because 'neither Entech, Inc. nor CDM were first or second-tier work force transition subcontractors.'

Appellant's Br. at 25, *quoting* a DOE letter to Haus, dated March 18, 2003.   As explained previously, even Mr. Haus had conceded that his work at Entech and CDM was not "under the Contract."

          On appeal, Mr. Haus has not argued that he worked "under the Contract."   Instead, he contends that the Bechtel Employee Handbook is the SPD for all of Bechtel's benefit plans (i.e., Mr. Haus insists that the individual SPDs for each of the individual plans are not the actual SPDs, but rather the Employee Handbook is).  He quoted the "Grandfathered Employees" provision repeatedly in his brief, at one point quoting it in full, but elsewhere quoting just the pertinent parts:

> Grandfathered Employees shall mean individuals who meet both of the following conditions:
>
> (A)     The individual was . . . *an employee of Lockheed Martin Energy Systems, Lockheed Martin Utility Services, or Lockheed Martin Energy Research (collectively, LM) on March 31, 1998*; . . . .
>
> (B)     The individual was either:  (1) *subsequently employed by the Contractor or its 1st - or 2nd - tier Subcontractors for work under the Contract prior to April 1, 2000*; . . . .

Appellee's Br. at 19, *quoting* the Bechtel "Your Employee Handbook," (emphasis by Appellee). The "Contract" is, of course, the DOE-Bechtel Environmental Management Contract.  Purporting to rely on this employee handbook description, Mr. Haus argued:

> The primary characteristics that qualified Haus for 'grandfathered' status were that (1) he was employed with Lockheed on March 31, 1998, *and* (2) he was employed by a Bechtel first-tier or second-tier subcontractor before April 1, 2000.

Appellee's Br. at 8 (emphasis in original).

          By omitting the "under the Contract" requirement, he deems himself entitled to grandfathered status merely because he was employed at the time in question by a company that was also a Bechtel subcontractor.  To give this some perspective, note that he could make the same argument if he had left LMES to become the night security guard at CDM's Boston headquarters or for an Entech office in Europe.  The argument would be fine if not for the "under the Contract" language.

          As stated above, Mr. Haus quotes the entire employee handbook provision in his brief, and even includes the "under the Contract" phrase in his emphasized portions, but after doing so he retreats back to his excised version, arguing:

> Haus was a Lockheed employee on March 31, 1998, and Haus was also thereafter employed by Bechtel's first-tier subcontractors before April 1, 2000. Consequently, Haus believed that he met the definition of a 'grandfathered' employee under the summary plan description in the employee handbook.

Appellee's Br. at 10.  The structure of this argument speaks volumes in that, rather than arguing that he *was* doing work "under the Contract," Mr. Haus crafts his entire theory around the argument that *it was not necessary* for him to have actually done work "under the Contract."   According to Mr. Haus' theory, all that was necessary was that he be "a Lockheed employee on March 31, 1998, and . . . also thereafter employed by Bechtel's first-tier subcontractors before April 1, 2000."

In its Footnote 3, the majority asserts that, "at oral argument the Appellant [i.e., Bechtel] admitted [there] was only one contract." This type of misstatement infects the entire majority opinion. In support of this proposition, the majority quotes an exchange from early in the appellate argument, during which Bechtel's obviously harried attorney attempts to explain his position, answering "Well, I think that's true, but . . . ." Recorded Transcript of Oral Argument at 6:40. The majority asserts this proposition as if it had been succinctly and unequivocally admitted, while even the quoted passage demonstrates that it was not. In fact, most of Bechtel's time at appellate argument was directed to this question, which eventually culminated in the following (far more thorough) exchange during rebuttal argument:

| | |
|---|---|
| Court: | So, I thought you said you only had one contract with the Department of Energy? Did you have more than one contract with the Department of Energy and you gave some to this tier one contractor and then you had other contracts with the Department of Energy that you gave to others? Is there more than one contract? Did you do work other than for the Department of Energy? |
| Attorney: | Does Bechtel Jacobs do . . . . |
| Court: | Yes, at that site. |
| Attorney: | Its not part of the record . . . I don't . . . I don't . . . I don't know. |
| Court: | Well, the question that's being asked here is, if there's only one contract with the Department of Energy, how can you have subcontractors working for Bechtel Jacobs doing anything other than work subcontracted under the Department of Energy contract? Now, I asked the question, 'are some of those subs doing work under the Department of Energy contract and also doing work that isn't under the Department of Energy contract,' which I thought you answered in the affirmative. |
| Attorney: | I think the answer is 'yes.' I mean, if you read the materials, that's exactly what's said. |
| Court: | So, in other words, there is work going on, at this site, by Bechtel Jacobs, with these subcontractors, that is NOT covered by the Department of Energy Contract? |
| Attorney: | Yes. |
| Court: | What contract is it covered by? |
| Attorney: | I guess there are other contracts that Bechtel has with those . . . those subcontractors, I mean, if you read, if you . . . . |
| Court: | Under what was the 'lasagna' work being done? |
| Attorney: | Excuse me, your honor? |
| Court: | Under what contract was the 'lasagna' work being done? |
| Attorney: | I believe it was a separate contract between Bechtel Jacobs and Entech. |

Court:          Well, what about the Department . . . wasn't it work you were doing
                for the Department of Energy under this, this umbrella contract?

Attorney:       Ah . . .

Court:          You weren't doing it for free were you?

Attorney:       No . . .

Recorded Transcript of Oral Argument at 31:54-33:48.  At that point, the Court interrupted and took the discussion in another direction.  The obvious conclusion of the above exchange, however, is that Bechtel Jacob's appellate attorney did *not* concede at oral argument that there "was only one contract," and certainly did not fail to "dispute[] that Haus worked under the DOE contract."

Even this is beside the point, however, as the very most that the majority can offer is that Bechtel's *appellate* counsel was equivocal on the matter.  But, this is not evidence.  In fact, there is no evidence in the record -- admissible or otherwise -- to support this contention; there is no Rule 36 admission, no interrogatory answer, no stipulation, no deposition testimony, no trial testimony . . . nothing . . . not even by Mr. Haus, who does not himself contend that he *was* doing work under the contract (as has been amply demonstrated herein).  And, this is the true point: Bechtel's failure to "explain what other contract Haus's employers operated under" is *irrelevant*.  Inexplicably, the majority fails to credit the most rudimentary concept of our adversarial system:  it is the *plaintiff* who bears the burden of proof.  Mr. Haus is the plaintiff in this case, and therefore, Mr. Haus was obliged to carry the burden of proof as to the controlling contract.  Of course, since Mr. Haus never argued that he was working "under the Contract," it would have been extraordinary for him to have produced evidence that he was.  It is only the majority that ever made such an allegation.  On the other hand, Bechtel, relying on established law, clearly anticipated that the plan administrator's decision would be upheld unless it was found to be arbitrary or capricious, and that a court of law would proceed on that standard.

Thus, the majority, in pursuing its desired outcome, construes the record much differently than I do, which of itself would require me to write separately.  More importantly, however, even if the majority's interpretation were in fact correct, the majority exceeds its prescribed role by imposing its own preferences on the plan administrator in this circumstance. The plan administrator provided a reasoned explanation for his interpretation, and therefore -- right or wrong -- his decision is not arbitrary or capricious.  The district court agreed and no one (other than the majority) has challenged this factual determination on appeal.  This aspect of the decision should be affirmed.

**III.**

By its plain terms, 29 U.S.C. § 1022 (titled "Summary plan description") applies only to summary plan descriptions:

> A summary plan description of any employee benefit plan shall be furnished to participants and beneficiaries as provided in [] this title.  The summary plan description shall include the information described in [] this section, shall be written in a manner calculated to be understood by the average plan participant, and shall be sufficiently accurate and comprehensive to reasonably apprise such participants and beneficiaries of their rights and obligations under the plan.

29 U.S.C. § 1022(a).  This statute provides no support for the (mis)application of it to full plan documents, or for a comparison and contrast of independent plans (as was done by the district court).

If the full plan and the summary plan description (SPD) are consistent, then the plain language of either the plan or the SPD may govern. *Wendy's Int'l Inc. v. Karsko*, 94 F.3d 1010, 1013 (6th Cir. 1996). However, "statements in a summary plan are binding and if such statements conflict with those in the plan itself, the summary shall govern." *Edwards v. State Farm Mut. Ins. Co.*, 851 F.2d 134, 136 (6th Cir. 1988). This common sense rule was intended to ensure fairness to employees who reasonably rely on the summary plan: "It is of no effect to publish and distribute a plan summary booklet designed to simplify and explain a voluminous and complex document and then proclaim that any inconsistencies will be governed by the plan." *Id*.

In the present case, the district court found no inconsistency between any SPD and its associated plan. In fact, the record did not even contain the actual plan for the 401k ( "Plan IV"), but contained only its SPD, so there was no way for the district court to find any conflict of the type criticized in *Edwards*, 851 F.2d at 136. Similarly, the record did not contain the SPD for the health plan ("Plan I"), only the full plan, so again, there was no way for a reviewing court to find an *Edwards*-type conflict. As for the other two plans, the district court stated frankly, "each is consistent and unambiguous with itself," and I find no basis to conclude differently.

The district court, having found no ambiguity between any plan and its SPD, took a statute that was designed to ensure that "summary booklets" are not misleading, and used it to find ambiguity among four intentionally independent things, i.e., the four independent plans. Under such an approach, the court could have compared the plans to *any* corporate document -- a travel reimbursement plan, a policy on company uniforms, a cafeteria lunch menu, etc. -- and upon finding inconsistency, deemed the plan ambiguous. Nothing in the cited statute supports such an action.

In finding a violation, the district court exclaimed, "[t]he conflict between Plan I and Plan II-IV creates ambiguity not among the internal definitions of the plans - each is consistent and unambiguous with itself - but with each other." However, this conflict, such as it is, does not violate 29 U.S.C. § 1022. Under ERISA, each plan is a distinct legal entity. ERISA § 502(d), 29 U.S.C. § 1132(d). I find no authority for the proposition that, if a company has more than one plan, then it must adopt uniform definitions among all of them. The district court's assertion -- that "the harm to Mr. Haus is all the more [grievous] because the conflict is . . . among the various plans offered by Bechtel" -- is erroneous, as is the conclusion that Mr. Haus is entitled to participate in *all* of the plans (including those for which he is admittedly not covered), because he "fits *some* of those definitions, but not all," and "is, under *most* of the plans they issued, clearly entitled." I believe this is reversible error, and the district court should not have even reached this issue.

The majority chooses to reach this issue as well, however, and in doing so expands *Edwards*, 851 F.2d at 136 ("statements in a summary plan are binding and if such statements conflict with those in the plan itself, the summary shall govern") to cover perceived (or in this case, fabricated) conflicts between "Plans *as interpreted* and their corresponding summaries." In this, the majority creates a new rule: this court need not review the actual plan to find a conflict and determine if the SPD controls; it need only consider whether the administrator interpreted (or appears to have interpreted, or could be said to have interpreted) the full plan in a way that is different from the way the court is presently interpreting the SPD. In the abstract, this is an unprincipled and unjustifiable explosion of this court's power into the realm of ERISA plan review. It would also seem to overrule the practical rule in *Wendy's*, 94 F.3d at 1013, that either the full plan or the SPD may govern absent a direct conflict. Under the majority's rule, this court can henceforth interpret an SPD any way it likes, and if that interpretation conflicts with the plan administrator's decision (i.e., the "plan as interpreted"), this court can impose its own preferred interpretation, purportedly based on *Edwards*. This is *de novo* review -- I fail to see how it could be anything less -- and thus, it is an entirely new rule of ERISA plan review. Moreover, this rule appears to be unjustified and unwarranted in this specific case, as there is no evidence to suggest that the administrator was interpreting the plans rather than the SPDs. It is just as likely, if not more likely, that the plan administrator was

interpreting the SPDs, although the distinction is probably artificial, in that, as the district court expressly recognized, the plans exhibit no conflict between plan and SPD (at least for Plans II and III, the two plans for which both plan and SPD are included in the record).

Finally, the majority makes the inexplicable and unsupportable assertion -- essential to its desired outcome -- that "[t]he ambiguity between the four plans' respective definitions of the term grandfathered employee undoubtedly did create confusion for the Plaintiff-Appellee and other lay beneficiaries, *but did not serve as the basis for the district court's decision*." On the contrary, the contradiction among the four plans was assuredly the basis for the district court's decision, as any reading of the district court's opinion makes evident.

## IV.

Because I believe that the majority has miscast the facts, ignored the controlling law, and created a decision that will cause confusion and harm in future cases, I must respectfully dissent.